# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| VLADIMIR GUSINSKY, derivatively on behalf of Nominal Defendant SOUTHWEST AIRLINES CO., | Case No. 3:25-cv-01816 |
| Plaintiff, | |
| v. | |
| CHRISTOPHER P. REYNOLDS, DAVID CUSH, DAVID J. GRISSEN, DAVID P. HESS, DOUGLAS H. BROOKS, GREGG A. SARETSKY, LISA M. ATHERTON, PATRICIA A. WATSON, PIERRE R. BREBER, RAKESH GANGWAL, ROBERT E. JORDAN, ROBERT L. FORNARO, SARAH FEINBERG, EDUARDO F. CONRADO, and ELAIN MENDOZA, | |
| Defendants, | |
| and | |
| SOUTHWEST AIRLINES CO., | |
| Nominal Defendant. | **JURY TRIAL DEMANDED** |

## VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Plaintiff Vladimir Gusinsky ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant Southwest Airlines Co. ("Southwest" or the "Company"), against certain members of its Board of Directors (the "Board"), seeking to remedy defendants' breaches of fiduciary duties. Plaintiff's allegations are based on personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available

information, including filings by Southwest with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## I.    NATURE AND SUMMARY OF THE ACTION

1.    Southwest was incorporated in 1967 with a customer-centered business model that prioritized simplicity and affordability in air travel. Unlike many legacy carriers of the time, Southwest focused on providing transparent pricing, deliberately distinguishing itself from legacy carriers that often relied on complex fare structures in an era marked by an industry-wide shift toward ancillary fee revenue. A hallmark of this business policy was Southwest's long-standing "Bags Fly Free" policy which permits passengers to check up to two bags without additional fees. This policy became emblematic of the airline's commitment to delivering value, and the Company since trademarked "Bags Fly Free" and emphasized the slogan as a core marking message for the brand. Southwest's adherence to its founding principles and Bags Fly Free policy allowed the Company to achieve sustained profitability and shareholder returns.

2.    Indeed, Southwest has invested substantial resources into evaluating the finanical impact of its Bags Fly Free policy. As recently as September, 2024, Southwest promoted that its in-depth research confirmed, resoundingly, that the policy "***generates market share gains in excess of potential lost revenue from bag fees.***"[1] The Company prominently highlighted these findings during its 2024 Annual Meeting of Shareholders (the "2024 Investor Day") presentation, where the Company specifically stated that "***eliminating the 'bags fly free' policy would destroy value***." During the presentation, Company executives emphasized the following slides demonstrating that ending Bags Fly Free would cost the Company at least $300 million:

---

[1]    Emphasis herein is supplied unless otherwise noted.





3.    However, in June 2024, Elliott Investment Management ("Elliott"), a hedge fund known for activist investing, acquired a $1.9 billion, roughly 11%, stake in Southwest. Elliott immediately launched a campaign targeting the Company's governance, and Chief Executive Officer Robert Jordan, in particular, demanding a new, "***reconstituted***" Board from outside of

Southwest.[2] Elliott also aggressively targeted the Company's "bags fly free" policy, calling it part of the Company's "*entrenched views on strategy*" that "*management has historically ruled out industry-standard commercial initiatives*" like "*checked bag fees*."[3] In its presentation, Elliott specifically cites that the Company maintained it would "absolutely never" have checked bag fees.

4.      In response, on July 2, 2024, the Board adopted a shareholder rights plan (the "Poison Pill"). The Poison Pill allowed existing shareholders to acquire shares at a discounted rate of 50% if any shareholder acquires 12.5% or more of its common stock. In turn, Elliott published another letter to the Board alleging the "Board put its own self-interest ahead of the Company."[4] In August 2024, Elliott escalated its campaign, publishing another public letter decrying the Board's "*entrenchment tactics*," and announcing its intent to nominate ten new directors and dismantle what it labeled as the Company's "*antiquated business practices.*"[5]

5.      In response, Southwest announced that, before and since Elliott launched its campaign in June, the Company had undertaken an extensive research process with the help of a top-tier global strategy firm. That strategy firm spoke with more than 40,000 customers through

---

[2]      Elliott Investment Management L.P., "Elliott Sends Letter and Presentation to the Board of Southwest Airlines," June 10, 2024, available at https://www.prnewswire.com/news-releases/elliott-sends-letter-and-presentation-to-the-board-of-southwest-airlines-302168276.html

[3]      Elliott Investment Management L.P., June 10, 2024, available at https://web.archive.org/web/20240610183205/https://strongersouthwest.com/wp-content/uploads/2024/06/Stronger-Southwest_06102024.pdf (the "Stronger Southwest Presentation"

[4]      Elliott Investment Management L.P., Letter to the Board of Southwest, July 8, 2024, available at https://web.archive.org/web/20240814003438/https://strongersouthwest.com/wp-content/uploads/2024/07/Elliotts-Letter-to-the-Board-of-Southwest-Airlines_07082024.pdf

[5]      Elliott Investment Management L.P., "Elliott Sends Open Letter to its Fellow Southwest Shareholders," Aug. 26, 2024, available at https://www.wjbf.com/business/press-releases/cision/20240826NY90902/elliott-sends-open-letter-to-its-fellow-southwest-shareholders/

multiple rounds of feedback. Southwest and its strategy firm also received qualitative feedback from hundreds of customers in focus groups and on-on-one interviews.

6.    The details of the Company's research and findings, along with the data underlying its conclusions, was presented at the Company's 2024 Investor Day. During the 2024 Investor Day, and in SEC and public filings, the Company stated definitively that it's "***extensive research reinforces Southwest's bags fly free policy remains the most important feature by far in setting Southwest apart from other airlines.***" The Company emphasized that "***any change in the current policy that provides every Customer two free checked bags would drive down demand and fair outweigh any revenue gains created by imposing and collecting bag fees.***"

7.    Elliott failed to substantially engage with the Board's data-backed strategic plan and "***remain[ed] entrenched in demanding control of the Board.***"[6] Southwest reported Elliott's actions, including its refusal to engage with its 2024 Investor Day findings, "highlight its lack of understanding of Southwest's business and its ***insatiable need to put its own interests ahead of those of all Shareholders.***"[7]  In October 2024, Elliott escalated its campaign again, demanding a special meeting of shareholders to consider proposals to remove, without cause, eight members of the Board and replace with director nominees selected by Elliott, in an apparent effort to secure full control of the Board.

8.    Shortly thereafter, on October 23, 2024, Southwest and Elliott entered a "cooperation agreement," under which Elliott withdrew its request for a special meeting, thereby eliminating the immediate risk of a complete Board overhaul. As part of the agreement, Southwest

---

[6]    Southwest Airlines, "Southwest Airlines Comments on Elliott Management's Special Meeting    Request,"    October    14,    2024,    available    at https://www.southwestairlinesinvestorrelations.com/news-and-events/news-releases/2024/10-15-2024-003209736

[7]    *Id.*

terminated the Poison Pill and appointed six new directors, including five nominees put forward by Elliott, and appointed Rakesh Gangwal as the chair of the Board. Further, the Company announced two incumbent directors would not stand for re-election to the Board at the 2025 Annual Meeting of Shareholders (the "2025 Investor Day") and seven other directors, including the Chairman of the Board, would "accelerate" their retirement, to go into effect on November 1, 2024.

9.      Following the Board's reconstruction, Southwest announced a series of new initiatives that directly conflicted with its previous data-supported, customer-centric business model. These actions violated the Board's fiduciary duties and served only to entrench the Board by eliminating the threat that Elliott would continue to seek replacement of legacy Board members.

10.      On March 11, 2025, the Company announced the termination of its Bags Fly Free policy, in a move the Company emphatically stated only months earlier "extensive research" had shown would "destroy value" for shareholders by $300 million per year. Widespread media coverage blasted the decision and attributed it to Elliott's pressure, framing it as another example of a hedge fund prioritizing immediate revenue increases at the expense of the Company's long-term sustainability.[8]

11.      Despite this and the Board's previous position, on April 4, 2025, the Board caused the Company to issue Proxy soliciting materials in connection with its 2025 Annual Meeting which endorsed the "bold moves" announced on March 11, 2025, as "crucial" to the Company's ability

---

[8]      *See e.g.* Forbes, "Southwest Airlines Just Made a Costly Mistake in Consumer Psychology," May 29, 2025, available at https://www.forbes.com/sites/rogerdooley/2025/05/29/southwest-airlines-just-made-a-costly-mistake-in-consumer-psychology/ ("Southwest's own research painted a worrisome picture. In September, it projected gaining $1-1.5 billion from bag fees but losing $1.8 billion in market share. Despite this, Southwest proceeded anyway, pressured by activist investor Elliott Investment Management's nearly 10% stake and its demand for immediate revenue increases.").

to "growth opportunities and reward our shareholders" and called the "changes to our Bags Fly Free policy," a "revenue opportunit[y]."

12.    These events precipitated this derivative action on behalf of Southwest by Plaintiff. On April 28, 2025, pursuant to the Texas Business Organizations Code ("TBOC") § 21.553, Plaintiff served upon the Board of Directors a Demand to investigate and remedy the breach of fiduciary duty, and violations of law described herein as required by Texas law.[9] The Demand stated that, either the Board and its Executive Officers misrepresented the research presented at the 2024 Investor Day in order to conceal a failed strategy, or, more likely, the Board and Executive Officers changed its Bags Fly Free policy despite knowing doing so would destroy value, due to pressure from Elliott and their threats to board membership. In either case, the Board breached their fiduciary duties and did so to entrench themselves.

13.    Before responding to the Demand the Board approved, on May 16, 2025, the amendment and restatement of the Company's bylaws (the "Bylaws"). The Bylaws, as amended, purport to require that a shareholder may not institute or maintain a derivative proceeding unless that shareholder beneficially ***owns three percent of the Company's issued and outstanding common stock*** (the "3% to Sue Bylaw"). Three percent of Southwest's current outstanding shares would be equal to approximately 17 million shares at a value of approximately $555.3 million, on May 16, 2025. The 3% to Sue Bylaw therefore would effectively shut the courthouse doors on Plaintiff.

14.    The Bylaws, as amended, further purport to require that each shareholder irrevocably and unconditionally waive any right to a trial by jury in any legal action, and state that "any person or entity purchasing or otherwise acquiring ***or holding any interest in shares*** of capital

---

[9]    *See* Exhibit 1 (the "Demand").

stock of the corporation shall be deemed to have notice of and consent to" this waiver (the "Retroactive Jury Trial Waiver Bylaw" and collectively, with the 3% to Sue Bylaw, the "Amended Bylaws").[10]

15.     On June 27, 2025, the Company's General Counsel responded to the Demand, stating that the Board would not take any action, and instead demanding Plaintiff "cease and desist from pursuing any litigation in violation of Southwest's Fifth Amended and Restated Bylaws."[11] The Response asserts that the 3% to Sue Bylaw, enacted after, and apparently because of, Plaintiff's Demand, effectively deprives Plaintiff of standing under Texas law.

16.     For these reasons and as set forth in greater detail herein, the Company's response does not comport with Texas and Federal law.

17.     The Amended Bylaws were adopted in breach of Defendants' fiduciary duties because their sole intent was to reduce the risk of being held accountable to the Company or its shareholders for any violations of law, including breaches of fiduciary duties or other misconduct, and to protect their tenure by entrenching their control of the Company.

18.     The Amended Bylaws were adopted for an improper purpose as the sole purpose of the Bylaw is to insulate Defendants from liability for violations of state and federal statutory law and breaches of fiduciary duties, both in the past and in the future.

19.     The Amended Bylaws also falls outside the scope of authority granted by TBOC §21.552(a)(3), and §2.116(b) because it is irreconcilable with Texas law as it relates to Plaintiff's claim.

---

[10]     Southwest's Retroactive 3% to Sue Bylaw was purportedly made pursuant to amendments to the TBOC passed only two days earlier. *See* Texas Business Organizations Code ("TBOC") §§ 21.552(a)(3), (permitting corporations to implement minimum ownership bylaws to maintain a derivative action), 2.116(b) (authorizing prospective jury waivers).

[11]     *See* Exhibit 2 (the "Response").

20.     Plaintiff now files this action against the Individual Defendants who abandoned their fiduciary duties and should now be held accountable for the financial and reputational harm suffered by Southwest and its shareholders.

21.     Plaintiff seeks a declaratory judgment in his favor, declaring that the Amended Bylaws were adopted in breach of Defendants' fiduciary duties, are irreconcilable with Texas law and public policy, and are invalid and unenforceable as they relate to Plaintiff's claims. For this purpose, Plaintiff has no adequate remedy at law.

22.     Plaintiff additionally seeks monetary damages and equitable relief on behalf of Southwest to remedy the harm Southwest has incurred and continues to incur due to the Board's bad faith termination of the Bags Fly Free policy.

## II.    JURISDICTION AND VENUE

23.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Subject matter jurisdiction is proper because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the named Plaintiff and Defendants are citizens of different states including Texas, Connecticut, New York, Florida, California, Virginia, Washington and Utah.

24.     This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

25.     Venue is proper in the Dallas Division of the Northern District of Texas pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this District by engaging in numerous activities that had an effect in this District.

## III.    PARTIES

**Plaintiff**

26.    Plaintiff is a beneficial owner of 100 shares of Southwest common stock. He has owned Southwest common stock continuously since 2022. Plaintiff is a citizen of Illinois.

**Nominal Defendant**

27.    Nominal Defendant Southwest is a Texas corporation with its principal executive offices located at 2702 Love Field Dr. #HDQ6TX, Dallas, Texas 75235. The Company's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "LUV."

**Defendants**

28.    Defendant Robert E. Jordan ("Jordan") has served as Southwest's CEO and a director since February 2022. He has served as Vice Chairman of the Board since May 2024. Jordan is a citizen of Texas.

29.    Defendant Douglas H. Brooks ("Brooks") has served as a Company director since 2010. He also serves as a chair and finanical expert on the Audit Committee and as a member of the Compensation Committee. Brooks is a citizen of Texas.

30.    Defendant David P. Hess ("Hess") has served as a Company director since 2021. He also serves as a member of the Audit Committee. Hess is a citizen of Connecticut.

31.    Defendant Christopher P. Reynolds ("Reynolds") has served as a Company director since 2022. He also serves as a member of the Compensation Committee. Reynolds is a citizen of New York.

32.    Defendant Lisa M. Atherton ("Atherton") has served as a Company director since May, 2024. She also serves as the chair of the Compensation Committee and a member of the Nominating and Corporate Governance Committee ("Corporate Governance Committee"). Atherton is a citizen of Texas.

33.     Defendant Rakesh Gangwal ("Gangwal") has served as a Company director since July 2024. He has served as the Chair of the Board of Directors since November, 2024. He also serves as a member of the Finance Committee. Gangwal is a citizen of Florida.

34.     Defendant David Cush ("Cush") has served as a Company director since November 2024. He also serves as a member of the Finance Committee. Cush is a citizen of California.

35.     Defendant David J. Grissen ("Grissen") has served as a Company director since November 2024. He also serves as a member and finanical exeprt on the Audit Committee, and a member of the Compensation Committee. Grissen is a citizen of Virginia.

36.     Defendant Gregg A. Saretsky ("Saretsky") has served as a Company director since November 2024. He also serves as a member of the Audit Committee and the chair of the Finance Commitee. Saretsky is a citizen of Washington.

37.     Defendant Patricia A. Watson ("Watson") has served as a Company director since November 2024. She also serves as a member of the Corpcoate Governance Committee. Watson is a citizen of Texas.

38.     Defendant Sarah Feinberg ("Feinberg") has served as a Company director since November 2024. She also serves as a member of the Compensation Committee and the Corporate Governance Committee. Feinberg is a citizen of New York.

39.     Defendant Pierre R. Breber ("Breber") has served as a Company director since November 2024. He also serves as a member and finanical exepert on the Audit Committee, and a member of the Compensation Committee. Breber is a citizen of California.

40.     Defendant Robert L. Fornaro ("Fornaro") has served as a Company director since September 2024. He also serves as a member of the Finanice Committee. Fornaro is a citizen of Florida.

41.    Defendant Eduardo F. Conrado ("Conrado") served as a Company director from 2023 until May 14, 2025. Conrado is a citizen of Utah.

42.    Defendant Elain Mendoza ("Mendoza") served as a Company director from 2023 until May 14, 2025. Mendoza is a citizen of Texas.

43.    Defendants Jordan, Brooks, Bacon, Hess, Reynolds, Atherton, Gangwal, Cush, Grissen, Saretsky, Watson, Feinberg, Breber, Fornaro, Conrado, and Mendoza are sometimes referred to herein as the Individual Defendants.

## IV.    DUTIES OF THE INDIVIDUAL DEFENDANTS

### A.    Fiduciary Duties

44.    By reason of their positions as officers, directors, and/or fiduciaries of Southwest and because of their ability to control the business and corporate affairs of Southwest, at all relevant times, the Individual Defendants owed Southwest and its shareholders fiduciary obligations of obedience, loyalty, and due care to the corporation, dedicating their uncorrupted business judgment for the sole benefit of the corporation. The Individual Defendants were required to act in furtherance of the best interests of Southwest and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interests or benefit.

45.    The Defendants breached their duties of obedience, loyalty, and due care by engaging in self-interested and entrenching actions, without regard to legal norms, as set forth herein.

46.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of Southwest, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with Southwest, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

47.     Defendants have a material self-interest in the Amended Bylaws and adopted it in bad faith and in breach of their fiduciary duties. They acted with the sole purpose of reducing their risk of being held liable to the Company and its shareholders for violations of federal and Texas law and other misconduct. In sum, Defendants have taken the law into their own hands and given themselves a license to ignore their clear fiduciary obligations without any accountability to the Company's shareholders. Defendants have, thus, unlawfully placed their own interests above the interests of the Company and its shareholders to whom they owe fiduciary duties.

### B.     Corporate Governance Guidelines

48.     The Company's Corporate Governance Guidelines provide that "[t]he fundamental responsibility of members of the Company's Board of Directors is to promote the best interests of the Company and its Shareholders by overseeing the management of the Company's business. In doing so, Board members have two basic legal obligations to the Company and its Shareholders: (a) the duty of care, which requires that Board members exercise appropriate and (b) the duty of loyalty, which generally requires that Board members make decisions based on the best interests of the Company's Shareholders and without regard to any personal interest[.]"

## V.     SUBSTANTIVE ALLEGATIONS

### A.     Southwest Was Founded On A Business Policy Of Transparent Pricing, Eschewing Short Term Ancillary Fee Revenue In Favor Of Long-Term Sustainable Revenue Driven By Customer Satisfaction

49.      Southwest was incorporated in 1967 with a customer-centered business model that prioritized simplicity and affordability in air travel. Unlike many legacy carriers of the time, Southwest focused on providing transparent pricing, deliberately distinguishing itself from legacy carriers that often relied on complex fare structures in an era marked by an industry-wide shift toward ancillary fee revenue. A hallmark of this business policy was Southwest's long-standing "Bags Fly Free" policy which permits passengers to check up to two bags without additional fees.

This policy became emblematic of the airline's commitment to delivering value, and it has since become both a registered trademark and a core marking message for the brand. Southwest's adherence to its founding principles and Bags Fly Free has allowed it to achieve sustained profitability and shareholder returns.

### B. Elliott, A Hedge Fund, Purchases A 11% Stake In The Company, Demands A Supermajority of the Board And The Elimination Of Policies Which Southwest Maintains Drive Value; Refuses To Work In The Best Interests Of The Company

50. On June 10, 2024, Elliott notified Southwest of its $1.9 billion stake, about 11% of the Company, in a letter and presentation sent to the Board. The letter asserted only "with the right leadership" could Southwest regain its status as an industry-leading airline. The letter targeted Defendant Jordan in particular and demanded a new "reconstituted" board of directors from outside of Southwest.[12]

51. Accompanying Elliott's June 10, 2024 letter was the Stronger Southwest Presentation. The Stronger Southwest Presentation aggressively targeted the Bags Fly Free policy, calling it part of the Company's "entrenched views on strategy" that "management has historically ruled out industry-standard commercial initiatives" like "checked bag fees."[13] In its presentation, Elliott specifically cited that the Company maintained it would "absolutely never" have checked bag fees, as follows in relevant part:

---

[12] *Supra* n. 2.

[13] Elliott Investment Management L.P., "Stronger Southwest" Presentation, June 10, 2024, available at https://web.archive.org/web/20240610183205/https://strongersouthwest.com/wp-content/uploads/2024/06/Stronger-Southwest_06102024.pdf.



52.     In response, on July 2, 2024, the Board adopted the Poison Pill. The effect of Poison Pill was to allow existing shareholders to acquire shares at a discounted rate of 50% if any shareholder acquires 12.5% or more of its common stock. The Poison Pill was adopted to discourage a takeover by Elliott. In turn, On July 8, 2024, Elliott published another letter to the Board alleging the "Board put its own self-interest ahead of the Company."[14]

53.     On July 25, 2024, Southwest issued a press release announcing the Company's finanical results for the Company's second fiscal quarter of 2024, ended June 30, 2024. The press

---

[14]     Elliott Investment Management L.P., Letter to the Board of Southwest, July 8, 2024, available at https://web.archive.org/web/20240814003438/https://strongersouthwest.com/wp-content/uploads/2024/07/Elliotts-Letter-to-the-Board-of-Southwest-Airlines_07082024.pdf

release touted that "second quarter 2024 operating revenues were an all-time quarterly record of $7.4 billion." The press release further asserted that the Company "remain[s] focused on developing and implementing a robust portfolio of initiatives to drive margin expansion and improve ROIC performance, all of which will be shared in detail at our Investor Day in late September."

54.     On the same date, the Company held an earnings call to discuss the Company's financial results. During the earnings call, Defendant Jordan defended the Bags Fly Free policy, stating as follows in relevant part:

> ***Just to be real clear on bags-like-free as a policy,*** I mean, ***we're not looking at this point to change that policy.*** Our industry-leading set of initiatives of customer-friendly policies. And you know the list is a big part of what attracts people to Southwest Airlines. And after fair and schedule, ***bags fly free is cited as the number one issue in terms of why customers choose Southwest***.

55.     On August 14, 2024, Elliot filed soliciting material with the SEC, pursuant to § 240.14a-12, on a Form DFAN14A, including, as Exhibit 1, letters in support of Elliott's position, including the Stronger Southwest Presentation which targeted the Bags Fly Free policy, calling it part of the Company's "***entrenched views on strategy***" that "***management has historically ruled out industry-standard commercial initiatives***" like "***checked bag fees***."

56.     On August 14, 2024, Southwest issued a press release addressing the ongoing conflict with Elliott which maintained that the Company would deliver its 2024 Investor Day presentation despite Elliott's campaign against Southwest. Specifically, on August 14, 2024, Southwest issued a press release which stated, in relevant part:

**SOUTHWEST AIRLINES COMMENTS ON ELLIOTT MANAGEMENT'S INTENT TO REPLACE A MAJORITY OF ITS BOARD**

DALLAS—Aug. 14, 2024—Southwest Airlines Co. (NYSE: LUV) (the "Company") has the following response to an announcement made by one of its Shareholders, Elliott Investment Management L.P. ("Elliott"), stating its intention

to replace a majority of the Southwest Airlines Board of Directors by nominating 10 candidates.

***Since Elliott launched its campaign against Southwest Airlines, the Board has consistently sought to engage constructively and in the best interests of all Shareholders.*** Elliott has dismissed those efforts at every turn. ***After Elliott recently agreed to a meeting with Southwest Airlines in early September to discuss a collaborative resolution, including continuing significant Board refreshment and other governance enhancements, Elliott unilaterally decided instead to publicly announce its intention to replace a majority of Southwest Airlines' Board.***

The Southwest Airlines Board and Executive Leadership Team remain open to conversations with Elliott to discuss ideas to drive Shareholder value, and the Board will evaluate Elliott's proposed nominees as part of its ongoing Board refreshment process. No immediate action is required of Shareholders.

Southwest Airlines is laser-focused on restoring its industry-leading financial performance and on building a sustainable and profitable future for the airline and all of its Shareholders. The airline recently announced several initiatives to elevate the Customer Experience, improve financial performance, and drive Shareholder value. ***Southwest Airlines will provide additional details on a comprehensive plan to transform its business, improve operational efficiency, and deliver capital allocation discipline during its Investor Day in late September.***

***Southwest Airlines is committed to maintaining a strong, independent Board with the right mix of skills and experience. The Board's Nominating and Corporate Governance Committee has taken deliberate actions to bolster the Board's existing expertise with professionals who offer a diverse range of skills that are critical to the airline's business and ongoing transformation.*** As part of its continued refreshment efforts, the Board has appointed a total of eight new independent and highly qualified Directors over the last three years, including the recent addition of experienced airline executive and entrepreneur Rakesh Gangwal.

The Southwest Airlines Board remains confident that the airline has the right Leadership Team in place to evolve the business and to lead Southwest Airlines forward.

57. On August 26, 2024, Elliott escalated its campaign, publishing a public shareholder letter decrying the Board's "entrenchment tactics," and announcing its intent to nominate ten new directors and dismantle what it labeled as the Company's "***antiquated business practices.***"[15]

---

[15] *Supra* n.5.

58.     On September 10, 2024, the Company issued a press release announcing the next phase in the Board's comprehensive refreshment plan that included, among other things, the planned departures of seven members of the Board. The press release stated as follows, in relevant part:

**Board Confident in CEO Bob Jordan and Committed to Holding Management Accountable for Delivering Results**

Southwest Airlines' Board is confident that there is no better leader than Bob Jordan to successfully ***execute Southwest Airlines' robust strategy to evolve the airline and enhance sustainable Shareholder value.*** Jordan is a 36-year industry veteran who has led the Company through some of its most turbulent times, while consistently driving transformational initiatives and innovation.

Over Jordan's tenure at the Company, he has led the acquisition and integration of AirTran Airways; was instrumental in the development of Southwest's e-commerce platform; launched a new and highly successful Southwest Airlines Rapid Rewards® program; oversaw a wholesale refresh of the Southwest Airlines brand; led the expansion of the route network domestically and introduced international flights and, during the height of the pandemic, led efforts around voluntary retirement and leave programs that were critical to maintaining Southwest Airlines' financial strength and sustainability.

***Jordan is implementing intentional changes to transform the business, meet evolving Customer preferences, enhance the Customer Experience, further modernize the airline, and drive Shareholder returns.*** During his tenure as CEO, Jordan has been the visionary and key driver behind the ***review and development of the commercial initiatives outlined at the airline's second quarter financials and made substantial improvements to the airline's operational performance, all with a commitment to driving improved financial performance.*** Introducing leadership change in the middle of Southwest Airlines' largest transformation to-date would present significant risk to the Company and its Shareholders.

The Board has high expectations for Jordan and the executive leadership team and will continue to hold them accountable for delivering results.

59.     On September 24, 2024, Southwest issued a press release which stated that Elliott was refusing to engage with the Company's data-driven 2024 Investor Day proposals, and that "***Elliott predetermined its position and has remained entrenched in demanding a supermajority***

*of the Board and immediate CEO change."* Specifically, the press release stated as follows, in

relevant part:

> SOUTHWEST AIRLINES RESPONDS TO ELLIOTT MANAGEMENT'S SHAREHOLDER LETTER AND PROVIDES UPDATE ON ENGAGEMENT
>
> DALLAS—Sept. 24, 2024—Southwest Airlines Co. (NYSE: LUV) (the "Company") today issued a response to Elliott Investment Management L.P.'s ("Elliott") recent Shareholder letter and provided an update on its engagement with Elliott ahead of the Company's long-planned Investor Day set for Thursday, September 26:
>
> **Elliott Engagement Update**
>
> Southwest has made every effort to reach a constructive resolution with Elliott, including over a dozen phone calls with Elliott representatives, several in-person meetings and an offer for Elliott to participate in the Company's Board refreshment process and understand its views on Southwest's business and strategy. It's unfortunate that Elliott has not only completely failed to engage constructively, but today has continued its pattern of launching public ambushes and is seeking to disrupt Southwest's upcoming Investor Day.
>
> ***Before even speaking with CEO Bob Jordan or hearing about the Company's plans, Elliott predetermined its position and has remained entrenched in demanding a supermajority of the Board and immediate CEO change.*** Since June, members of the Board have met with many investors to solicit candid feedback on Southwest's strategy and path forward. It is clear Shareholders desire that Southwest engage and seek a compromise with Elliott that is in all Shareholders' best interests and allows the Company to focus on executing its transformative strategy to move the Southwest forward. The Board has repeatedly sought to do exactly this, but acquiescing to a single Shareholder's demand for absolute control of the Company is not a compromise.
>
> **<u>Recent Board Refreshment</u>**
>
> ***Southwest recently announced the next phase of its Board transformation and invited Elliott's participation in that process***. The Board's refreshment plans include six retirements in November and Executive Chairman Gary Kelly's retirement at the 2025 Annual Meeting, the anticipated appointment of four new Directors, and the naming of new Committee Chairs and a new Lead Independent Director. Before announcing these significant steps, members of the Board met with Elliott to propose a resolution framework that included giving due consideration to appointing up to three Elliott candidates to the Board. Elliott itself acknowledged that the announced changes are "unprecedented."

***In response, Elliott has inexplicably refused to allow its candidates to meet with the Board*** and required them to sign agreements that explicitly prevent them from joining the Board without Elliott's approval. Further, all of Elliott's candidates declined or ignored direct invitations to meet with representatives of Southwest's Nominating and Corporate Governance Committee. The Southwest Board remains willing to consider in good faith Elliott's Director candidates for appointment to the Board, if Elliott will allow the Board to meet them.

***In the meantime, Southwest will continue its Board refreshment to ensure the Board maintains fresh perspectives and strong oversight.*** The airline has added or appointed eight highly qualified independent Directors over the past three years, including the Company's newest Directors Rakesh Gangwal, co-founder of India's largest airline, InterGlobe Aviation (IndiGo) and previous executive at US Airways Group and United Airlines, and Lisa Atherton, president and CEO of Bell. The Company continues to cultivate a strong pipeline of potential candidates who would bring relevant experience to the Southwest Board.

**<u>Transformation Plan & Leadership</u>**

***Southwest is executing a transformational plan including tactical and strategic initiatives that will position the airline to elevate the Customer Experience, improve financial performance and drive sustainable Shareholder value.*** The Company is hosting its Investor Day in Dallas on Thursday, September 26 when Shareholders will have the opportunity to hear more about these initiatives and Southwest's plan to restore its industry leading performance. Elliott's attempt to disrupt the Investor Day and failure to offer any feedback or suggestions on Southwest's transformational plan reveals that Elliott continues to value public attacks and seizing control of the Company over the airline's future and all of its Shareholders' interests.

60.      On September 25, 2024, Defendant Jorden published a video message, concurrently filed with the SEC on a Form 8-K, which reiterated the Company's commitment to its 2024 Investor Day transformation plan. Specifically, the filed transcript of the video call stated as follows, in relevant part:

Well, hey Southwest Warriors. Bob Jordan here.

I'm sure many of you have seen or heard that one of our Shareholders, Elliott Investment Management, issued a statement yesterday saying that they intend to call a Special Meeting of Shareholders soon to nominate their director candidates for election to Southwest's Board. While Elliott hasn't officially requested a Special Meeting, I promise to be transparent and keep you updated.

*So, I wanted you to hear my perspective on this and directly from me. Well, we're gearing up for our Investor Day tomorrow, our Team has spent a lot of time speaking with lots of our Shareholders, as well as with many of you, to get candid thoughts on our strategy and how together we can make Southwest even better. What we've confirmed from this process is that Southwest has many Shareholders who are incredibly knowledgeable about our business and thoughtful about ways we can evolve to great value.*

We have appreciated our Shareholders' willingness to have candid conversations and collaborate on ways to continually improve Southwest for all of our benefit! Many, many times now, we have extended this same courtesy to Elliott—both to provide feedback on our business and strategy and to participate in our Board refreshment process, including by offering to potentially add up to three of their Director candidates to the Board.

Not once has Elliott provided us with any feedback, nor have they shown any willingness to participate with us in our refreshment process—none. Elliott has not even allowed its candidates to meet with our Board. It's no surprise that they have now chosen to front-run our Investor Day with yet another negative press public ambush to create a distraction and continue their efforts to exert control over our Board and therefore over our Company.

And as we've said before, we're willing to compromise, but acquiescing to a single Shareholder's demand for control of the Company is not a compromise. Despite Elliott's actions, our Board and Team are committed to treating Elliott the Southwest Way—our door is open, and we remain hopeful they will engage constructively. So far, they have chosen not to at every turn. We will consider their candidates for appointment to the Board if they allow our Board to meet with them.

***In the meantime, we are moving full speed ahead with our transformational plan.*** We recently announced comprehensive changes to our Board, and we have a strong pipeline of potential candidates who would bring relevant experience and may join the Board room in the coming months. ***We are unveiling tactical and strategic initiatives at our Investor Day tomorrow*** that will position Southwest to continue to elevate the Customer Experience, improve our financial performance, and drive Shareholder value.

**C.    Southwest Presents Its Data-Driven Research Finding The Bags Fly Free Policy Drives Revenue And Eliminating Or Changing It Would Cause Significant Customer And Financial Risk**

61.    On September 26, 2024, the Company hosted a conference call pursuant to the

Company's 2024 Investor Day (the "2024 Investor Day Call"). During the 2024 Investor Day Call,

the Company's Executive Vice President of Commercial Transformation, Ryan C. Green

("Green"), explained the research performed in support of the Company's finanical analysis of the Bags Fly Free policy, including that, for over a year the Company had undertaken an extensive research process with the help of a top-tier global strategy firm which spoke with more than 40,000 customers through multiple rounds of feedback. Green further explained how Southwest and its strategy firm also received qualitative feedback from hundreds of customers in focus groups and on-on-one interviews. Green's statements concluded with the findings of the research, that "***in each scenario we tested or they tested, changing our bags policy would be value destructive.***" Specifically, during the 2024 Investor Day Conference Call, Green stated as follows, in relevant part:

> Post-pandemic, customer preferences and travel patterns have evolved. Andrew just spent time covering that. But to fuel the next frontier of revenue growth, we wanted to understand those changes deeply. And while we always listen to our customers to understand their needs and what drives choice, ***we started an extensive research process in September of last year. That involved speaking with more than 40,000 customers through multiple rounds of research about their needs, their attitudes, their behaviors to get a deep understanding of what they care about most when choosing who they fly.***
>
> ***This exercise covered both existing Southwest customers as well as customers of other airlines*** given both groups will drive the next phase of our growth. Our research was deep and comprehensive. ***In addition to the thousands of quantitative survey results, we received qualitative feedback from hundreds of customers via multiple rounds of focus groups and one-on-one interviews to gain the clearest possible picture of what customers are looking for from Southwest.***
>
>              *            *            *
>
> Now let me elaborate a little more on how we reached our conclusion on our 2 free bags policy. As Bob pointed out, it was a feature that was studied as part of ***our extensive research effort and was conducted by a top-tier global strategy firm.*** They surveyed thousands of customers and tested several scenarios across today's open seating models and in the context of a future assigned seating world at Southwest.
>
> The tests ranged from offering no bags included in the base, Wanna Get Away fare, which would be similar to the basic economy fare on other airlines. So offering one bag free with Wanna Get Away and even to offering free bags as a co-brand credit card holder benefit.

*So what did we find? First, there's a very high awareness of our bags fly free policy. Second, it is far and away the top feature that differentiates Southwest from our competitors, and it is one of the top criteria in why customers choose Southwest Airlines.* Everyone knows that schedule and price are the top reasons that drive choice in the airline industry, and we are no different. However, as you can see on the slide, our free check bag policy is a close third in why customers choose us, only a few percentage points behind schedule. The fact that free bags is a key driver of choice creates the risk that customers may choose the competition if we change the policy. And that's what the results showed.

*The consulting firm measured the impact on future flight activity, how much ancillary revenue we would collect on charging bag fees and the impact on brand perception.* And they use sophisticated statistical analytical methods to calibrate the results to reflect future behavior changes by significantly adjusting customer stated defection rates down in markets where Southwest has high market share. And they did this to ensure they can answer the -- where the customer is going to go question, given all other airlines charge bag these.

*But in each scenario we tested or they tested, changing our bags policy would be value destructive. The results show too much defection in future flying, even in markets where we're strong, that more than offset the ancillary revenue we'd earn from bag fees.*

The results from one of the scenarios tested is shown on the slide here and is the one that would most closely mimic a basic economy fare from another airline, with no bags included as part of the base product and Wanna Get Away. And as you can see, *the loss in trips flown from customer defection overwhelms the value of the incremental ancillary revenue from bag fees and results in $300 million less in revenue.*

So the data is clear that our focus on the customer is also good for shareholders.

62.    During the 2024 Investor Day Conference Call, Defendant Jordan offered prepared remarks which purported to espouse the Company's support for its "policies, in particular, 2 bags fly free" as backed by "*extensive data-driven research, which we recently updated shows that they are the right economic choice, driving sustained revenue through customer loyalty and repeat business.*" Defendant Jordan's prepared remarks continued, stating as follows in relevant part:

In particular, we engaged a third party to do a *comprehensive study, to understand the financial trade-offs of keeping or changing our bags fly free policy.* Ryan will cover this in more detail, but the answer is clear. Our policy not only provides

customer value and generates enduring loyalty, the policy also generates significant shareholder value, and *there is significant customer and financial risk to eliminating or changing the policy*.

63.    During the 2024 Investor Day Conference Call, in response to an analyst question, Jordan further touted the Company's purported data-driven support for the Bags Fly Free Policy, stating as follows, in relevant part:

> And again, the -- *on the Bags Fly Free side, it's a significant driver of why customers come to Southwest.* It's fare, it's schedule, and then it's the policy. And it's a huge halo in terms of the value that customers perceive in terms of what they receive from Southwest and why they choose Southwest Airlines. And the financial study just wasn't compelling.
>
> So you're trying to -- in my mind, it would be -- it would have to be overwhelmingly compelling given that it's very clear that consumers attach a ton of value to the Bags Fly Free policy, which I'm very proud of. *It's also a moat for us* because we're unique in the industry in terms of what we offer. So if that's valuable to you, there is no place to go but Southwest Airlines.
>
> *                *                *
>
> But at the end of the day, the customer preference for Bags Fly Free and the value they attribute to that was overwhelmingly positive. And the awareness, 97% awareness, of our policy is simply incredible. And so *there's just significantly high risk to changing that policy at this point.*

64.    On September 26, 2024, Southwest filed with the SEC the slides used in conjunction with the Company's 2024 Investor Day presentation as attached to the Company's 8-K as Exhibit 99.1 (the "2024 Investor Day Presentation"). The 2024 Investor Day Presentation repeatedly touted that the Company's research found "'*Bags fly free' is central to our Customers' purchase habits and brand value*." The 2024 Investor Day Presentation stated that the year-long impact analysis of the elimination of the bags fly free policy found doing so "*would destroy value*" and result in an estimate *$1.8 billion in lost market share and an "annual EBIT loss estimated at ~300M," "significant brand impact (including a sharp drop in NPS)",* and the *"loss of a primary differentiator."* The 2024 Investor Day Presentation concluded that the Company was

"staying true to the Southwest promise to drive Shareholder value" first and foremost with the bags fly free policy. Specifically the 2024 Investor Day Presentation stated as follows, in relevant part:



&ast;    &ast;    &ast;



&ast;    &ast;    &ast;





65.    On September 26, 2024, the Company issued a press release in connection with its

Investor Day event. The press release touted the Company's unveiling of its "transformational plan

at investor day" *"guided by data-driven research of travelers' changing needs and expectations"*

which will *"preserve aspects of the business that make the airline unique among its competitors"*

and states **"[e]xtensive research reinforces Southwest's bags fly free® policy remains the most important feature by far in setting Southwest apart from other airlines."** The press release reiterated strongly that **"[b]ased on Southwest's research, the Company believes that any change in the current policy that provides every Customer two free checked bags would drive down demand and far outweigh any revenue gains created by imposing and collecting bag fees."**

Specifically, the press release states as follows, in relevant part:

### SOUTHWEST AIRLINES UNVEILS ITS "SOUTHWEST. EVEN BETTER" TRANSFORMATIONAL PLAN AT INVESTOR DAY

• Reimagines core product to meet evolving Customer preferences and increase, revenue opportunities

• *Launches new commercial initiatives to enhance Customer Experience and drive value while preserving flexible policies like bags fly free*

• Expects to deliver in 2027: approximately $4 billion in cumulative incremental earnings before, interest and taxes (EBIT) contribution and alter-tax return on invested capital (ROIG) of 15 percent or greater well above weighted average, cost of capital (WAGG)

• Board approves $2. 5 billion share repurchase program

**DALLAS - Sept. 26, 2024- Southwest Airlines Co.** (NYSE: LUV) ("Southwest®" or the "Company") today will host an Investor Day briefing in Dallas where Southwest Leaders will outline next steps in a comprehensive three-year plan that builds upon the Company's *unique business model for an even better Southwest.* The carrier is transforming its Customer Experience to provide more choices and greater comfort for Customers, *designed to drive revenue growth* and return the carrier to industry-leading profitability.

"We're now ushering in a new era at Southwest, moving swiftly and deliberately to transform the Company by elevating the Customer Experience, improving financial performance, and *driving sustainable Shareholder value* said Bob Jordan, President, Chief Executive Officer, and Vice Chairman of the Board.

Key themes and new initiatives to be detailed at Investor Day include:

### Transforming Our Product to Meet Customer Preferences

*Southwest's transformation is guided by data-driven research of travelers' changing needs and expectations.* Southwest's evolution will provide even more

choices for its Customers and *preserve aspects of the business that make the airline unique among its competitors:*

\*                     \*                     \*

• **Bags Continue to Fly Free** *Extensive research reinforces Southwest's bags fly free® policy remains the most important feature by far in setting Southwest apart. from other airlines. Based on Southwest's research, the Company believes that any change in the current policy that provides every Customer two free checked bags would drive down demand and far outweigh any revenue gains created by imposing and collecting bag fees.*

We've spent the past few years laying a foundation that serves as the base of our transformation," said Ryan Green, Executive Vice President Commercial Transformation. "We've already started rolling out modernized cabins with improved WiFi, in-seat power., larger overhead bins, enhanced operational efficiencies, and optimized flight schedules. We will continue to build upon our unique competitive advantages, while adapting to consumer priorities in today's dynamic environment."

\*                     \*                     \*

**Delivering a Financial Plan to Drive Sustainable Profitability and Shareholder Returns.**

The strategic vision announced today is designed to return us to financial prosperity and drive value creation," said Tammy Romo, Executive Vice President and Chief Financial Officer. "'*We have a dear and measurable path that we, expect will enable us to cover our WACC in 2026 and achieve after-tax ROIG of at least 15 percent in 2027."*

Key elements of Southwest's financial plan include:

• **Cost Discipline:** The Company's multi-year plan is ,expected to deliver an estimated $500 million run rate of cost savings in 2027, by minimizing hiring. optimizing scheduling efficiency, capitalizing on supply chain opportunities, and improving corporate efficiency.

• **Strategic Fleet Management:** Southwest is pursuing opportunities to monetize the value of its fleet order book and drive a significant fleet modernization, with the goal of achieving an average fleet age of just five years in 2031. The Company's. fleet strategy is ,expected to reduce average aircraft capital expenditures to approximately $500 million through 2027.

• **Prudent Capital Deployment:** Southwest is balancing its capital allocation priorities to minimize capital expenditures on aircraft, continue investing in infrastructure that optimizes operations, and manage debt to preserve the airline's investment-grade balance sheet, all while returning capital to Shareholders through

dividends and share repurchases. The Board of Directors today approved a $2.5 billion share repurchase program, *reflecting the Board's confidence in the strategic plan and new revenue generating initiatives, and in management's ability to execute.*

66.    These and other documents show the Company's executives acknowledged that Southwest had extensive research, data, and documentation finding definitively that its Bags Fly Free policy drove shareholder value and the elimination of it would destroy value.

### D.    After Elliott Attempts To Forcibly Remove Eight Members Of The Board, Southwest And Elliott Enter Into A Cooperation Agreement

67.    Elliott failed to substantially engage with the Board's data-backed strategic plan and "*remain[ed] entrenched in demanding control of the Board.*"[16] Southwest reported Elliott's actions, including its refusal to engage with its 2024 Investor Day findings, "highlight its lack of understanding of Southwest's business and its *insatiable need to put its own interests ahead of those of all Shareholders.*"[17]  In October 2024, Elliott requested a special meeting of shareholders to consider proposals to remove, without cause, eight members of the Board and replace with director nominees selected by Elliott, in an apparent effort to secure full control of the Board.

68.    On October 14, 2024, the Company issued a press release in response to Elliott's request for a special meeting of shareholders, stating Elliott's request "*appears designed to maximize disruption of Southwest's execution of its important business transformation underway.*" The press release further reiterated that "*Company's tactical and strategic initiatives are guided by data-driven research*." Specifically the press release stated as follows, in relevant part:

---

[16]    Southwest Airlines, "Southwest Airlines Comments on Elliott Management's Special Meeting Request," October 14, 2024, available at https://www.southwestairlinesinvestorrelations.com/news-and-events/news-releases/2024/10-15-2024-003209736

[17]    *Id.*

DALLAS, Oct. 14, 2024 /PRNewswire/ -- Southwest Airlines Co. (NYSE: LUV) ("Southwest" or the "Company") today confirmed that Elliott Investment Management L.P. ("Elliott") requested a Special Meeting of Shareholders to consider Elliott's proposals, including to **remove without cause eight members of Southwest's Board of Directors (the "Board") and elect eight Director candidates chosen by Elliott, which appears designed to result in full control of the Board by Elliott's nominees.** Southwest's Board issued the following statement in response:

Elliott's Special Meeting request is unnecessary and inappropriate considering the extreme nature of Elliott's demands. **The timing of Elliott's request to apparently pursue Board control appears designed to maximize disruption of Southwest's execution of its important business transformation underway as we approach one of the busiest travel periods of the year.** Elliott's actions highlight its lack of understanding of Southwest's business and its insatiable need to put its own interests ahead of those of all Shareholders. **Before and since Elliott launched its campaign in June, the Board has had extensive dialogue with a significant number of Southwest Shareholders. The Board's actions have been rooted in feedback from these conversations, including the comprehensive Board and governance changes recently announced.**

Southwest also heard Shareholders' resounding preference that the Company engage with Elliott and seek to avoid a protracted dispute. The Board has made every effort to reach a constructive resolution, including providing a reasonable settlement framework under which the Board would interview Elliott's candidates and appoint up to three to a reconstituted 13-member Board that would be reduced to 12 following Executive Chairman Gary Kelly's retirement at the 2025 Annual Meeting of Shareholders. **For Elliott's part, its latest framework for settlement reflects its continuing interest in seeking effective control of both the Board and management,** including by installing Robert Milton, former CEO of Air Canada and a member of Elliott's Board slate, as Executive Chair of Southwest.

**Unfortunately, Elliott remains entrenched in demanding control of the Board,** while continuing to block its Director candidates from being interviewed by the Board's Nominating and Corporate Governance Committee, making it impossible to find a constructive resolution. For nearly four months, Elliott has failed to offer any substantive feedback on Southwest's strategic plan. **The Company was encouraged that Elliott might be turning the page ahead of Investor Day, when it requested a preview of Southwest's Investor Day materials as a condition of engaging in settlement discussions. After providing Elliott a detailed, in-person preview of the Company's plan more than a week before Investor Day, Elliott failed to provide input and continued its public attacks ahead of and following Investor Day.**

**Elliott's failure to provide actionable feedback, coupled with the disruptive nature of its demands, should give Shareholders pause about Elliott's true intentions.**

29

The Board will carefully review the Special Meeting request in accordance with its fiduciary duties, Texas law and the Company's bylaws, including Elliott's stated request to hold the meeting on December 10, 2024. The Board intends to discuss the process for setting a Special Meeting with Elliott in a constructive manner. The Board is committed to acting in the best interests of Southwest and its Shareholders and will provide further updates in due course. No immediate action is required of Shareholders.

Southwest will continue to move expeditiously to transform its business, improve financial performance and make meaningful Board and corporate governance changes. The Board reiterated the following steps that Southwest has taken in recent months:

*       *       *

**"Southwest. Even Better." Transformational Plan**

***Southwest is implementing a comprehensive three-year plan designed to drive revenue growth and return the airline to industry leading profitability. The Company's tactical and strategic initiatives are guided by data-driven research*** of travelers' changing preferences to transform the airline and are expected to deliver:

- Approximately $4 billion in cumulative incremental run rate EBIT contribution in 2027

- ROIC of 15 percent or greater, well above WACC in 2027

The Board strongly believes Bob Jordan is the right leader to successfully execute Southwest's plan and Leadership change amid such a significant transformation would be detrimental to all Shareholders. The Board has high expectations for Jordan and the Leadership team and will continue to hold them accountable for delivering results.

69.    However, on October 23, 2024, Southwest and Elliott entered into the Cooperation Agreement, under which Elliott withdrew its request for a special meeting, thereby eliminating the immediate risk of a complete Board overhaul. As part of the agreement, Southwest terminated the Poison Pill and appointed six new directors, including five nominees put forward by Elliott, and appointed Defendant Gangwal as the chair of the Board. Further, the Company announced two incumbent directors would not stand for re-election to the Board at the 2025 Investor Day and seven other directors, including the Chairman of the Board, would "accelerate" their retirement, to go into effect on November 1, 2024.

E.    **The Individual Defendants Caused Southwest To Implement A Series Of New Initiatives, Including Checked Bag Fees, That Directly Conflicted With Its Previous Data-Supported, Customer-Centric Business Model In Order To Entrench Themselves**

70.    Following the Board's reconstruction, the Individual Defendants caused the Company to implement a series of new initiatives that directly conflicted with its previous data-supported, customer-centric business model. These actions violated the Board's fiduciary duties and served only to entrench the Board. In SEC filings and public statements, the Individual Defendants claimed to support the elimination of the Bags Fly Free policy, despite the Company's earlier position.

71.    On March 11, 2025, the Individual Defendants caused the Company to issue a press release announcing the termination of its Bags Fly Free policy in a press release. The press release, among other things, quoted Defendant Jordan as stating the change in the Bags Fly Free policy would help the Company "return to the levels of profitability that both we and our Shareholders expect." Specifically, the press release stated as follows, in relevant part:

## SOUTHWEST AIRLINES OUTLINES CHANGES TO DRIVE REVENUE GROWTH AND REWARD ITS MOST LOYAL CUSTOMERS

DALLAS-March 11, 2025- Southwest Airlines Co. (NYSE: LUV) is evolving rapi1dly implementing new initiatives that support business objectives and create choice for current and future Customers of America's largest domestic carrier. ***Initiatives announced today will reward the airline's most loyal Customers and give all Customers more options for a broader range of travel experiences.***

***We have tremendous opportunity to meet current and future Customer needs, attract new Customer segments we don't compete for today, and return to the levels of profitability that both we and our Shareholders expect said Bob Jordan, President,*** Chief Executive Officer, & Vice Chairman of the- Board of Directors at Southwest Airlines. "We will do all this is while remaining focused on what's made us strong- our People and the authentic, friendly and award-winning Customer Service only they can provide."

The initiatives announced today include the following:

*• Southwest® will continue to offer two free checked bags to Rapid Rewards® A-List Preferred Members and Customers traveling on Business Select® fares, and one free checked bag to A-List Members and other select Customers. Southwest will credit one checked bag for Rapid Rewards Credit Card members. Customers who do not qualify for these free bag options will be charged for their first and second checked bags (weight and size limitations apply). Changes will apply to flights booked on or after May 28, 2025.*

72.    On March 11, 2025, Defendant Jordan participated in the J.P. Morgan 2025 Industrials Conference. During the Industrials Conference, Defendant Jordan attributed the Company's reversal on its Bags Fly Free policy to, in part, the input of new Board members, stating as follows, in relevant part:

> One obvious question is the switch in our position on bag fees relative to what was presented at Investor Day last fall, and I want to hit that head-on. In contrast to our previous analysis, actual customer booking behavior through our new booking channels such as metasearch did not show that we are getting the same benefit from our bundled offering with free bags, which has led us to update the assumptions. **We've also benefited from the additional experience of leaders that have direct experience implementing bag fees at multiple airlines,** and that's also helped further validate the new assumptions.

73.    Media coverage panned the Company's decision and attributed it to capitulation to Elliott's pressure, framing it as another example of an activist hedge fund prioritizing short-term gains at the expense of a Company's long-term sustainability.[18]

74.    The elimination of the Bags Fly Free policy was intended solely to further entrench current management at the expense of the best interests of the Company and was in breach of the Company's fiduciary duty.

---

[18]    *See e.g.* Forbes, "Southwest Airlines Just Made a Costly Mistake in Consumer Psychology," May 29, 2025, available at https://www.forbes.com/sites/rogerdooley/2025/05/29/southwest-airlines-just-made-a-costly-mistake-in-consumer-psychology/ ("Southwest's own research painted a worrisome picture. In September, it projected gaining $1-1.5 billion from bag fees but losing $1.8 billion in market share. Despite this, Southwest proceeded anyway, pressured by activist investor Elliott Investment Management's nearly 10% stake and its demand for immediate revenue increases.").

75.    At the same time, the Company repeatedly assured investors that it had effective internal controls and procedures over disclosure and sufficient oversight over the Company's operations.

76.    On April 4, 2025, the Individual Defendants caused the Company to file the Company's proxy statement on a Form DEF14A in connection with the Company's 2025 Investor Day (the "2025 Proxy Statement"), endorsing the elimination of the Bags Fly Free policy. The 2025 Proxy Statement included a "message from our independent chair," Defendant Gangwal, which endorsed the "bold moves" announced on March 11, 2025, as "***crucial***" to the Company's ability to "***growth opportunities and reward our shareholders***." Specifically, the 2025 Proxy Statement quoted Defendant Gangwal stating as follows, in relevant part:

Dear Shareholder:

In the annals of commercial aviation, Southwest Airlines has a hallowed place filled with successes that made it the envy of the industry. Today, your Company is undergoing unprecedented change and the Board itself has undergone an extraordinary transformation with the induction of nine new Directors, including myself, and nine retirements. We recognize that Southwest has been facing a gradual and insidious operating margin squeeze due to rising costs and ***missed revenue opportunities.***

We are focused on costs while recognizing the need to offer competitive wages across all employee groups, upgrade key information technology systems, and make other necessary investments. At the same time, we are cognizant of revenues our competitors reap from bag fees, seat assignments, extra legroom seats, participation in online travel agency portals, and so on. ***As part of a listening tour during 2024, certain Directors met with numerous shareholder groups*** who all expect change and accountability. ***Your Board has heard you and is answering that call for meaningful change to create enduring and superior value for shareholders and for all other stakeholders.***

＊                    ＊                    ＊

Today, I am proud to report that the management team is demonstrably focused on the need to move with speed and intensity and to innovate. ***There is no better evidence of that than the initiatives launched over recent months, especially the initiatives we announced on March 11 of this year. These bold moves*** would have been unheard of within Southwest's recent history and ***are crucial*** to further

33

broaden our customer appeal, continue to provide employees with attractive wages and benefits, ***pursue growth opportunities, and reward our shareholders.*** Change is never easy, and of course we will have well-wishers and detractors raise questions as we navigate forward. If we go too far or fall short, we will course correct. The transformation of Southwest Airlines to regain its rightful place in the airline industry is well underway, fueled by the enthusiasm of our employees who consistently demonstrate legendary hospitality and passion for serving their customers.

77.    The 2025 Proxy Statement further endorsed the removal of the Bags Fly Free policy as it included a message from the Defendant Jordan which stated that the Company's "changes to our Bags Fly Free policy," was a "revenue opportunit[y]." Specifically, the 2025 Proxy Statement quoted Defendant Jordan as stating as follows, in relevant part:

> Our Board has a duty to challenge management to perform at its best and to hold management accountable to deliver. I welcome that oversight and focus, and I see the leadership team rising to the challenge. Our team is keenly aware of the expectations of our Shareholders and intensely focused on taking swift action to return Southwest to industry-leading financial performance.
>
> *              *              *
>
> ***Last month, we announced some of the most consequential changes in our Company's history, including changes to our Bags Fly Free policy,*** optimization of our Rapid Rewards loyalty program, the introduction of a basic economy fare product, and expanded distribution through online travel agencies. Through the pursuit of these and other additional ***revenue opportunities***, combined with the significantly increased targets for our cost plan, we expect to materially accelerate and increase our earnings and regain our margin position. We now expect to hit our long-term ROIC target in 2026, a full year earlier than forecasted. We also announced plans to return additional value to Shareholders by completing the remaining $1.5 billion of share repurchases under the Company's $2.5 billion share repurchase authorization by the end of July. We are inspired by the direction we're headed, confident in our ability to deliver against our plan, and will remain resolute in identifying and pursuing opportunities to improve Southwest's value proposition for all stakeholders.

**F.    Upon Receiving Plaintiff's Demand, The Board Entrenches Themselves Further, Amends Southwest's Bylaws, In Violation Of The Board's Fiduciary Duties, Attempting To Shut The Courthouse Doors On Plaintiff**

78.    On April 28, 2025, pursuant to TBOC § 21.553, Plaintiff served on the Board of Directors a Demand to investigate and remedy the breaches of fiduciary duty and other

wrongdoing described herein as required by Texas law. *See* Exhibit 2. Plaintiff's Demand states

that he has owned Southwest shares continuously since 2022. The Demand alleges that, as detailed

herein, the Board harmed the Company by, among other things, breaching their fiduciary duties to

Southwest. The Demand states that, either the Board and its Executive Officers misrepresented the

research presented at the 2024 Investor Day to conceal a failed strategy, or, more likely, the Board

and Executive Officers changed its Bags Fly Free policy despite knowing doing so would destroy

value, due to pressure from Elliott and their threats to board membership. In either case, the Board

breached their fiduciary duties and did so to entrench themselves.

79.    After it received the demand but before making their legally required response to

the Demand, on May 16, 2025, the Board approved the amendment and restatement of the

Company's Bylaws as follows, in relevant part:

> Section 16. **Derivative Proceedings.** No shareholder may institute or maintain a
> derivative proceeding unless that shareholder is a Shareholder (as defined in
> Section 31.551(2) of the Texas Business Organizations Code) that beneficially
> owns at least three (3) percent of the outstanding shares of the corporation.
>
> *              *              *
>
> Section 1. **Exclusive Forum.**
>
> (a) Unless the corporation consents in writing to the selection of an alternative
> forum, the United States District Court for the Northern District of Texas or, if such
> court lacks jurisdiction the Texas Business Court located in Dallas County, Texas,
> shall to the fullest extent permitted by applicable law, be the sole and elusive forum
> for (i) any derivative action or proceeding brought on behalf of the corporation; (ii)
> any action asserting a claim of breach of a fiduciary duty owed by any director
> officer or other employee of the corporation to the corporation or the corporation's
> shareholders; (iii) any action asserting a claim against the corporation or any
> director, officer or other employee of the corporation pursuant to any provision of
> the Certificate of Formation  or the Bylaws (as either may be amended from time
> to time) or the Texas Business Organizations Code; and (iv) any other action
> asserting a claim against the corporation or any director officer, or other employee
> of the corporation constituting an "internal entity claim" under the Texas Business
> Organizations Code. ***Any person or entity purchasing or otherwise acquiring or
> holding any interest in shares of capital stock of the corporation shall be deemed
> to have notice of and consented to (A) the provision of this Article IX*** and (B)

jurisdiction and venue in the United States District Court for the Northern District of Texas and the Texas Business Court located in Dallas County, Texas. ***Each shareholder irrevocably and unconditionally, waives any right it may have to a trial by jury in any legal action, proceeding, cause of action or counterclaim concerning any internal entity claim and to the fullest extent permitted by applicable law in any other claim, action or proceeding against the corporation or any director, officer or other employee of the corporation.***

80.      On June 27, 2025, the Board responded to the Demand, stating that it would not investigate the allegations or take any action, and instead demanded Plaintiff "cease and desist from pursuing any litigation in violation of Southwest's Fifth Amended and Restated Bylaws." *See* Exhibit 2. The Response asserts that the Board's amendment of the Bylaws, made after Plaintiff's Demand, effectively deprives Plaintiff of standing under Texas law.

81.      The Board's refusal of the Demand does not comport with Texas law. Plaintiff now files this action against the Individual Defendants who abandoned their fiduciary duties and should be held accountable for the financial and reputational harm suffered by Southwest and its shareholders.

82.      The Board adopted the Amended Bylaws notwithstanding Plaintiff's accrued and vested rights and the pending Demand.  Indeed, the Board appears to have adopted the Amended Bylaws ***in response to*** Plaintiff's Demand. The sole purpose of the Amended Bylaws is to insulate Defendants from shareholder redress for violations of state and federal statutory law and breaches of fiduciary duties, both in the past and in the future.

83.      The Amended Bylaws were adopted in breach of Defendants' fiduciary duties because their sole purpose was to reduce the risk of being held accountable to the Company or its shareholders for any violations of law, including breaches of fiduciary duties or other misconduct, and to protect their tenure by entrenching their control of the Company.

84.     The Amended Bylaw were adopted for an improper purpose as they unilaterally override federal and state law and judicial precedent which expressly mandate the requirements that public shareholders must meet to commence and prosecute class or derivative actions.

85.     Three percent of Southwest's current outstanding shares would be equal to approximately 17,096,100 shares, at a value of approximately $571.7 million, at the time of the commencement of this action.

86.     The Bylaw imposes a pre-filing requirement so onerous that it effectively guarantees that, notwithstanding the provisions of federal and state law, no derivative actions can be filed against Defendants or the Company, regardless of the extent of their misconduct. The Bylaw places all-but-insurmountable hurdles before the courthouse doors and is designed to, and effectively does, eliminate Plaintiff's statutory and common law rights to commence and prosecute derivative litigation, no matter how egregious the wrongs committed by Defendants. The sole purpose of the Amended Bylaws is therefore to deprive Plaintiff of his rights without regard to the Company's best interest.

87.     The Amended Bylaws fall outside the scope of authority granted by TBOC §21.552(a)(3), and §2.116(b) because it is irreconcilable with federal and Texas law as it relates to Plaintiff's claim, as it applies retroactively to Plaintiff's accrued and/or vested rights.

88.     By adopting a Bylaw that is irreconcilable with federal and Texas law, Defendants have acted disloyally and in bad faith and placed their own interests in avoiding liability to shareholders over the interests of both the Company and the public shareholders to whom they owe fiduciary duties.

## VI.    DAMAGES TO THE COMPANY

89.     As a direct and proximate result of the Individual Defendants' conduct, Southwest has been seriously harmed and will continue to be. Such harm includes, but is not limited to, the

harm to Southwest from the policy change, which Southwest and its global consultant calculated to be at least $300 million per year.

90.     Such harm also includes costs incurred from compensation and benefits paid to defendants who have breached their duties to Southwest.

91.     In addition, Southwest's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired. The credibility and motives of management are now in serious doubt.

## VII.    DERIVATIVE AND DEMAND ALLEGATIONS

92.     Plaintiff brings this action derivatively in the right and for the benefit of Southwest to redress injuries suffered, and to be suffered, by Southwest as a direct result of the wrongdoing alleged herein. Southwest is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

93.     Plaintiff will adequately and fairly represent the interests of Southwest in enforcing and prosecuting its rights.

94.     Plaintiff has continuously been a shareholder of Southwest at times relevant to the wrongdoing complained of and is a current Southwest shareholder.

95.     On April 28, 2025, Plaintiff made a demand on the Board to investigate and remedy the violations of law described herein as required by Texas law. *See* Exhibit 1. Plaintiff's Demand states that Plaintiff has owned Southwest shares since 2022. The Demand states that, either the Board and its Executive Officers misrepresented the research presented at the 2024 Investor Day in order to conceal a failed strategy, or, more likely, the Board and Executive Officers changed its Bags Fly Free policy despite knowing doing so would destroy value, due to pressure from Elliott and their threats to board membership. In either case, the Board breached their fiduciary duties and did so to entrench themselves.

96.     On June 27, 2025, the Company's counsel responded to the Demand, stating that the Board refused to investigate the allegations in the Demand, would not take any action in response to the Demand, and instead demanded Plaintiff "cease and desist from pursuing any litigation in violation of Southwest's Fifth Amended and Restated Bylaws." *See* Exhibit 2. The Response asserts that the 3% to Sue Bylaw, enacted after Plaintiff's Demand, effectively deprives Plaintiff of standing under Texas law.

97.     The Board is not majority disinterested and did not in fact respond to the Demand in an independent and disinterested manner.  Of the thirteen current directors on Southwest's Board, seven of them, defendants Jordan, Brooks, Hess, Reynolds, Atherton, Fornaro, and Gangwal were members of the Board in September of 2024 and issued the 2024 Investor Day presentation, and as a result actually knew of the research demonstrating that terminating the Bags Fly Free policy would harm the Company.  These seven directors nevertheless agreed to terminate the Bags Fly Free policy a few months later to preserve their own position on the Board.  Their agreement to terminate the Bags Fly Free policy was therefore not a good faith exercise of business judgment but a disloyal decision to put their own positions and income over the good of the Company.  Likewise, the remaining six directors on the Board are nominees of Elliot who could not and did not disinterestedly consider the Demand due to Elliot's position on the Bags Fly Free policy.  Reflecting the fact that the Board was not disinterested, it did not convene an independent committee or employ any process to shield consideration of the Demand from these conflicts even though the entire Board is clearly conflicted.

98.     Unsurprisingly, the conflicted Board refused to investigate the merits of the Demand in clear violation of Texas law.  The Board conducted no investigatory process in response to the Demand.  The Board produced no report and did not document its procedures, reasoning or

conclusions regarding the merits of the Demand. There is no evidence that the Board reviewed relevant facts, interviewed any witnesses, collected or reviewed any documents, properly identified the potential claims at issue, or applied the correct legal standards to potential claims. As a result, the Board was entirely uninformed as to the potential merits of the claims as compared to any weaknesses and could not weigh the chance of recovery against other considerations in an informed manner.

99.     The Board did not retain independent counsel or advisors to evaluate the demand. Instead, the Response is the work of conflicted inhouse counsel. As a result, to the extent the Board received any legal advice on the Response, it was the work product of conflicted Southwest employees beholden to defendant Jordan for their continued employment and compensation.

100.     Instead of responding to the Demand as required by Texas law, the Board refused to even consider the merits of the claims and enacted the Amended Bylaws.

101.     For these reasons and as set forth in greater detail herein, the Board's refusal of the Demand was not a valid exercise of business judgment and was unreasonable under Texas law.

## COUNT I

### Against All Defendants for Breach of Fiduciary Duty

102.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

103.     Each Individual Defendant owes and owed to the Company the duty to exercise good faith, fair dealing, candor, and loyalty in the management and administration of Southwest's business and affairs.

104.     The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. The Individual Defendants

intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Southwest.

105.    In breach of their fiduciary duties, the Defendants failed to act in the best interests of the Company, eliminated the Bags Fly Free policy, approved the 2025 Proxy Statements, and adopted the Bylaw Amendments to entrench themselves. These actions were taken in breach of the Defendants fiduciary duty because the Board knew of the research demonstrating that terminating the Bags Fly Free policy would harm the Company at a cost of at least $300 million per year. The Board nevertheless agreed to terminate the Bags Fly Free policy a few months later to preserve their own position on the Board. Their agreement to terminate the Bags Fly Free policy was therefore not a good faith exercise of business judgment but a disloyal decision to put their own positions and income over the good of the Company. The Board then enacted the Amended Bylaws

106.    In breach of their fiduciary duties, the Individual Defendants adopted the Amended Bylaws for the sole purpose of reducing their risk of being held accountable to the Company or its shareholders for any violations of law, including breaches of fiduciary duties or other misconduct, and to protect their tenure by entrenching their control of the Company.

107.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Southwest has sustained and continues to sustain significant damages. Including direct monetary damages, exposure to liability from litigation and a loss of goodwill in the capital markets. As a result of the misconduct alleged herein, defendants are liable to the Company.

## COUNT II

### Declaratory Judgement Pursuant to 28 U.S.C. § 2201

108.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

41

109.    As a result of the conduct of Defendants described herein, there is a controversy regarding the validity of the Amended Bylaws as it relates to Plaintiff, due to the Individual Defendant's violation of their fiduciary duties and because the Amended Bylaws, as applied to Plaintiff in this Action, conflict with law, including but not limited to the Texas Constitution's prohibition against retroactive laws (Article I, § 16); the Texas Constatation's Open Courts provision (Article 1 § 13); and Texas contract law.

110.    The Amended Bylaws also falls outside the scope of authority granted by TBOC §21.552(a)(3), and §2.116(b) because it is irreconcilable with Texas law as it relates to Plaintiff's claim.

111.    Accordingly, Plaintiff hereby seeks a declaratory judgment pursuant to the provisions of 28 U.S.C. § 2201-2202 that such amendment to Southwest's bylaws is not valid to the extent only that it relates to Plaintiff's claims, such that Plaintiff may maintain this Action.

112.    Plaintiff is also entitled to all necessary and proper relief based on such declaratory judgment, including, but not limited to all costs and reasonable and necessary attorney's fees incurred in this proceeding pursuant to 28 U.S.C. § 2202.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of Southwest, demands judgment as follows:

A.    Declaring that Plaintiff may maintain this action on behalf of Southwest and that Plaintiff is an adequate representative of the Company;

B.    Declaring that Defendants have breached their fiduciary duties to Southwest;

C.    Declaring that the Amended Bylaws invalid and unenforceable as it relates to Plaintiff's claims;

D.    Preliminarily and permanently enjoining Defendants from enforcing the Amended Bylaws against Plaintiff in this case;

E.     Against all of the Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties;

F.     Directing Southwest to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Southwest and its stockholders from a repeat of the damaging events described herein.

G.     Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that Plaintiff on behalf of Southwest has an effective remedy;

H.     Awarding to Southwest restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

I.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

J.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated:  July 10, 2025                     Respectfully submitted,


                                          */s/ Joe Kendall*
                                          JOE KENDALL
                                          Texas Bar No. 11260700
                                          **KENDALL LAW GROUP, PLLC**
                                          3811 Turtle Creek Blvd., Suite 825
                                          Dallas, Texas 75219
                                          Telephone:  214/744-3000 / 214/744-3015 (fax)
                                          jkendall@kendalllawgroup.com

**GLANCY PRONGAY & MURRAY, LLP**
Benjamin I. Sachs-Michaels
745 Fifth Avenue, Fifth Floor
New York, NY 10151
Telephone: (212) 935-7400
Email: bsachsmichaels@glancylaw.com

Robert V. Prongay
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email:  rprongay@glancylaw.com
        prajesh@glancylaw.com

*Counsel for Plaintiff Vladimir Gusinsky*

## **VERIFICATION**

I, Vladimir Gusinsky, do hereby verify that I am a holder of stock of Southwest Airlines Co., and was a holder of such stock at the time of the wrongs complained of in the foregoing Verified Stockholder Derivative Complaint ("Complaint"). I have authorized the filing of the Complaint. I have reviewed the Complaint. All of the averments contained in the Complaint regarding me are true and correct upon my personal knowledge. With respect to the remainder of the averments, all are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 07-09-2025

_____

Vladimir Gusinsky