# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| VLADIMIR GUSINSKY, derivatively on behalf of Nominal Defendant SOUTHWEST AIRLINES CO., | § § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| CHRISTOPHER P. REYNOLDS, DAVID CUSH, DAVID J. GRISSEN, DAVID P. HESS, DOUGLAS H. BROOKS, GREGG A. SARETSKY, LISA M. ATHERTON, PATRICIA A. WATSON, PIERRE R. BREBER, RAKESH GANGWAL, ROBERT E. JORDAN, ROBERT L. FORNARO, SARAH FEINBERG, EDUARDO F. CONRADO, and ELAINE MENDOZA, | § § § § § § § § § § § § § | Case No. 3:25-cv-01816-K |
| Defendants, | § § | |
| and | § § | |
| SOUTHWEST AIRLINES CO., | § § § | |
| Nominal Defendant. | § | |

## DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(B)(1), 12(B)(6), 23.1, AND BASED UPON STATUTORY BAR AND BYLAW AND BRIEF IN SUPPORT

## <u>TABLE OF CONTENTS</u>

**Page**

I.   SUMMARY OF ARGUMENT ................................................................................. 1

II.  STATEMENT OF FACTS ................................................................................... 4

III. LEGAL STANDARDS ...................................................................................... 7

IV.  ARGUMENT AND AUTHORITIES .................................................................... 8

  A.  Gusinsky's Complaint Should Be Dismissed Because It Is Barred by SB 29 and the Three Percent Bylaw ...................................................................................................... 9

    1.  SB 29 Does Not Exempt Shareholders Who Previously Served a Demand .................. 9

    2.  Dismissal Is Thus Proper ......................................................................... 12

  B.  Gusinsky's Declaratory Judgment Claim Is Legally Groundless and Likewise Fails To Comply with the Texas Derivative Statute ........................................................... 13

    1.  The Declaratory Claim Does Not Satisfy the TBOC's Requirements for Shareholder Derivative Claims ......................................................................................... 13

    2.  The "Fiduciary Duty" Argument Fails ....................................................... 14

    3.  The Purported Constitutional, Contractual, and "Federal" Arguments Fail ............... 16

      a.  Gusinsky's "Open Courts" Argument Is Meritless ...................................... 16

      b.  Gusinsky's "Retroactivity" Argument Is Equally Groundless ......................... 17

      c.  Gusinsky Has No Other Basis For a Declaratory Claim ............................... 25

V.   CONCLUSION .............................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ainsworth v. Sw. Drug Corp.*,
95 F.2d 172 (5th Cir. 1938) ...................................................................................21

*In re American Apparel, Inc. S'holder Deriv. Litig.*,
2012 WL 9506072 (C.D. Cal. July 31, 2012) ........................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................7

*Ballew v. Cont'l Airlines, Inc.*,
668 F.3d 777 (5th Cir. 2012) ...................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................7, 25

*Bridgewater v. Double diamond-Delaware, Inc.*,
2011 WL 1671021 (N.D. Tex. Apr. 29, 2011) .......................................................13

*Burgess v. United States*,
553 U.S. 124 (2008) ...............................................................................................10

*Burks v. Lasker*,
441 U.S. 471 (1979) .................................................................................................3

*Butorin v. Blount*,
106 F. Supp. 3d 833 (S.D. Tex. 2015) (Miller, J.) ............................................20, 21

*CANarchy Craft Brewery Collective, L.L.C. v. Texas Alcoholic Beverage Comm'n*,
37 F.4th 1069 (5th Cir. 2022) ................................................................................11

*In re Cirrus Logic, Inc.*,
2009 WL 10670041 (W.D. Tex. Jan. 8, 2009) ......................................................24

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949)....................................................................................3, 22, 23, 25

*Crittendon v. Health and Human Servs. Comm.*,
2023 WL 3483358 (W.D. Tex. Apr. 13, 2023).........................................................8

*DeJoria v. Maghreb Petroleum Exploration, S.A.*,
935 F.3d 381 (5th Cir. 2019) .................................................................................17

*Matter of Estate of Poe*,
648 S.W.3d 277 (Tex. 2022)...................................................................................17

*Ezell v. Dinges,*
  137 F.4th 291 (5th Cir. 2025) ........................................................................7, 12

*Fowler v. Gen. Ins. Co. of Am.,*
  No. 3:14-CV-2596-G, 2014 WL 5879490 (N.D. Tex. Nov. 13, 2014) ...................10

*Funk v. Stryker Corp.,*
  631 F.3d 777 (5th Cir. 2011) ..................................................................................8

*Gilbreath v. Horan,*
  682 S.W.3d 454 (Tex. App.—Houston [1st Dist.] 2023, no pet.) .........................12

*Gonzalez v. UniversalPegasus Int'l Inc.,*
  531 S.W.3d 276 (Tex. App.—Houston [14th Dist.] 2017, no pet.)........................19

*Grant Me Wisdom Found., Inc. v. Boyar,*
  No. 14-23-00849-CV, 2025 WL 478189 (Tex. App.—Houston [14th Dist.]
  Feb. 13, 2025, pet. denied).....................................................................................18

*Grinnell v. Munson,*
  137 S.W.3d 706 (Tex. App.—San Antonio 2004, no pet.)....................................17

*Guardian Flight LLC v. Health Care Service Corp.,*
  735 F. Supp. 3d 742 (N.D. Tex. 2024) ....................................................................8

*Gusinsky v. Flanders Corp.,*
  2013 WL 5435788 (N.C. Sup. Sept. 25, 2013).....................................................24

*Hanson v. Odyssey Healthcare, Inc.,*
  2007 WL 5186795 (N.D. Tex. Sept. 21, 2007)......................................................18

*Hardt v. Reliance Standard Life Ins. Co.,*
  560 U.S. 242 (2010)................................................................................................11

*Harold H. Huggins Realty, Inc. v. FNC, Inc.,*
  634 F.3d 787 (5th Cir. 2011) ................................................................................12

*HL Farm Corp. v. Self,*
  877 S.W.2d 288 (Tex. 1994)..................................................................................16

*Hogan v. Southern Methodist Univ.,*
  688 S.W.3d 852 (Tex. 2024)............................................................................18, 22

*Kamen v. Kemper Fin. Servs., Inc.,*
  500 U.S. 90 (1991)..........................................................................................3, 7, 12

*In re Kosmos Energy Ltd. Secs. Litig.,*
  299 F.R.D. 133 (N.D. Tex. 2014) ....................................................................23, 24

*Lewis v. Knutson,*
  699 F.2d 230 (5th Cir. 1983) ................................................................................12

*In re Life Partners Holdings, Inc.,*
  2015 WL 8523103 (W.D. Tex. Nov. 9, 2015)..........................................................7

*Johnson ex rel. MAII Holdings, Inc. v. Jackson Walker, L.L.P.*,
   247 S.W.3d 765 (Tex. App.—Dallas 2008, pet. denied) ...................................16, 17, 20, 22

*Marron v. Ream*,
   2006 WL 2734267 (S.D. Tex. May 5, 2006) ...................................................................8, 12

*Melder v. Morris*,
   27 F.3d 1097 (5th Cir. 1994) ...........................................................................................23

*Morice v. Hospital Service Dist. #3*,
   2020 WL 730323 (E.D. La. Feb. 13, 2020) .......................................................................8

*Overland Auto. Co. v. Cleveland*,
   250 S.W. 453 (Tex. Civ. App.-Dallas 1923, writ dism'd w.o.j.) ........................................21

*Pace v. Jordan*,
   999 S.W.2d 615 (Tex. App.—Houston [1st Dist.] 1999, pet. denied)........................15, 18, 19

*Panella v. Tesco Corp.*,
   2019 WL 1606349 (S.D. Tex. Mar. 29, 2019) ...................................................................24

*In re Parkcentral Global Litig.*,
   2010 WL 3119403 (N.D. Tex. Aug. 5, 2020) .....................................................................7

*Pelletier v. Victoria Air Conditioning, Ltd.*,
   780 F. App'x 136 (5th Cir. 2019) .....................................................................................7

*Renne v. Geary*,
   501 U.S. 312 (1991)...................................................................................................6, 7

*Ritchie v. Rupe*,
   443 S.W.3d 856 (Tex. 2014)......................................................................................15, 16

*Robinson v. Crown Cork & Seal Co., Inc.*,
   335 S.W.3d 126 (Tex. 2010).............................................................................................18

*Rosenthal v. Morris*,
   2006 WL 8438449 (N.D. Tex. Aug. 21, 2006) (Means, J.).............................................20, 22

*Sarandi v. Breu*,
   2009 WL 2871049 (N.D. Cal. Sept. 2, 2009) ....................................................................12

*In re Schmitz*,
   285 S.W.3d 451 (Tex. 2009)........................................................................3, 14, 19, 22, 23

*Smith v. Davis*,
   426 S.W.2d 827 (Tex. 1968)......................................................................................16, 25

*Sneed v. Webre*,
   465 S.W.3d 169 (Tex. 2015)...........................................................................................20

*Texas Nat'l Guard Armory Board v. McCraw*,
   126 S.W.2d 627 (Tex. 1939).............................................................................................16

*Union Carbide Corp. v. Synatzske*,
  438 S.W.3d 39 (Tex. 2014) ............................................................................18, 20

*United Production Corp. v. Hughes*,
  137 Tex. 21, 152 S.W.2d 327 (1941) ...................................................................10

*United States v. Moore*,
  71 F.4th 392 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 551 (2024) ...........................10

*Vladimir Gusinsky Revocable Trust v. Hayes*,
  2025 WL 1517442 (Del. May 28, 2025) ...............................................................24

*Wendt v. 24 Hour Fitness USA, Inc.*,
  821 F.3d 547 (5th Cir. 2016) ..............................................................................7

**Rules and Statutes**

28 U.S.C. § 2072(b) .................................................................................................7

Tex. Bus. Org. Code § 21.057(b) ...........................................................................21

Tex. Bus. Org. Code § 21.057(c) ....................................................................5, 14, 21

Tex. Bus. Org. Code § 21.551 *et seq.* .......................................................................25

Tex. Bus. Org. Code § 21.551(1) .........................................................................2, 9

Tex. Bus. Org. Code § 21.551(2)(C) .......................................................................19

Tex. Bus. Org. Code § 21.552(a)(3) .................................................................4, 9, 15

Tex. Bus. Org. Code § 21.553(a) ....................................................................9, 14, 19

Tex. Bus. Org. Code § 21.554 ...............................................................................25

Tex. Bus. Org. Code § 21.558 ..........................................................................20, 21

Fed. R. Civ. P. 12(b)(1) ...................................................................................6, 7, 12

Fed. R. Civ. P. 12(b)(6) .......................................................................................7, 12

Fed. R. Civ. P. 23.1 .............................................................................................7, 12

**Other Authorities**

Black's Law Dictionary (12th ed. 2024) ...................................................................10

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 23.1, and based on the statutory bar recently enacted by the Texas Legislature and the corresponding share ownership bylaw adopted by Southwest Airlines Co. ("Southwest"), Nominal Defendant Southwest and Defendants Christopher P. Reynolds, David Cush, David J. Grissen, David P. Hess, Douglas H. Brooks, Gregg A. Saretsky, Lisa M. Atherton, Patricia A. Watson, Pierre R. Breber, Rakesh Gangwal, Robert E. Jordan, Robert L. Fornaro, Sarah Feinberg, Eduardo F. Conrado, and Elaine Mendoza (collectively with Southwest, "Defendants") move to dismiss this suit in its entirety.[1]

## I.    SUMMARY OF ARGUMENT

Plaintiff Vladimir Gusinsky purports to bring this action derivatively on behalf of Southwest, claiming that Southwest's directors and officers breached their fiduciary duties to the company in making a business decision to change Southwest's "Bags Fly Free" policy. On May 14, 2025, however, Texas Governor Greg Abbott signed Senate Bill 29 ("SB 29"), which amended the Texas derivative statute to allow Texas corporations to prohibit a shareholder from instituting a derivative proceeding if that shareholder beneficially owns less than three percent of the company's outstanding common shares. *See* S.B. 29, 89th Leg. § 13 (2025). SB 29 became effective immediately. *See* S.B. 29, 89th Leg. § 27 (2025). As expressly authorized by SB 29, Southwest amended its bylaws on May 16, 2025—***before this suit was filed on July 10, 2025***—to prohibit shareholders with less than a three percent interest from filing derivative lawsuits.

As such, the outcome of this case is simple—Gusinsky's suit must be dismissed. Gusinsky admittedly does not meet the three-percent ownership threshold and owns fewer than 0.00002%

---

[1] Southwest reserves all rights under Tex. Bus. Org. Code § 21.551 *et seq.*, including without limitation, the right to form a committee under Tex. Bus. Org. Code § 21.554.

of Southwest's outstanding common shares, yet improperly seeks to override the will of Texas' elected representatives and the judgment of Southwest's elected directors. Although Gusinsky served a demand letter on Southwest before SB 29 was enacted, he did not file suit until after SB 29 became law and after Southwest's bylaw amendment. The three-percent threshold applies to any "derivative proceeding" brought after the threshold was adopted, with "derivative proceeding" expressly defined by the statute to mean a "civil suit" and not merely a demand letter.[2] Because Gusinsky did not file suit until after the three-percent threshold was adopted, his suit is barred.

Unwilling to accept the express limitations on derivative suits adopted by Texas' elected representatives and Southwest's shareholder-elected directors, Gusinsky also seeks a declaratory judgment that the amended bylaw does not apply to his claims and was adopted by Southwest's directors in violation of their fiduciary duties—even though SB 29 ***expressly authorized Southwest's Board to do exactly what it did***. Gusinsky's declaratory claim admits that the three-percent threshold bars his suit if the bylaw amendment is enforced. Not only is Gusinsky's declaratory judgment claim itself a derivative claim that is barred by Gusinsky's noncompliance with the derivative statute, but it is legally groundless and simply asks the Court to override a validly adopted statute and bylaw for no legitimate reason. Texas law forecloses Gusinsky's conclusory assertions that the Texas Constitution's "open courts" and retroactivity provisions prohibit application of the three-percent threshold, nor is there any other proper basis for asking this Court to disregard an unambiguous bylaw expressly authorized by Texas statute, which in turn was approved by overwhelming bipartisan majorities in both houses of the Legislature.

---

[2] *See* TEX. BUS. ORG. CODE § 21.551(1)

There is nothing remotely improper about a state legislature imposing additional limitations on derivative suits. Courts have long recognized that the "internal affairs" of corporations—including standards for director duties, the right to adopt bylaws, and the permissibility of shareholder derivative suits—are governed by state law and are appropriately regulated by state legislatures.[3] As the Supreme Court explained, "[t]he very nature of the stockholder's derivative action makes it one in the regulation of which the legislature of a state has wide powers," and that "[n]o type of litigation is more susceptible of regulation than that of a fiduciary nature." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949) ("A state may set the terms on which it will permit litigations in its courts"). In light of these "wide powers," Gusinsky had no "settled expectation" or any legal right to assume that the Texas Legislature would not exercise those powers to impose additional limitations on derivative suits.

Further, "the principle that a corporation should be run by its board of directors, not a disgruntled shareholder or the courts" is long enshrined in Texas law and further precludes any conceivable claim that Gusinsky—who appears to be a serial filer of shareholder derivative and class action lawsuits[4]—had a "settled expectation" or vested right to usurp the authority of Southwest's Board by filing a derivative suit. *See In re Schmitz*, 285 S.W.3d 451, 456-57, 459 (Tex. 2009) (recognizing that companies may take the identity of the shareholder into account in determining how to proceed on a derivative demand); *Cohen*, 337 U.S. at 552-53 ("[W]e are unable to say that a classification for these purposes, based upon the percentage or market value of the

---

[3] *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98-99 (1991) (applying state substantive law to shareholder derivative suit and emphasizing that corporations "'are creatures of state law' and that "'it is state law which is the font of corporate directors' powers'") (quoting *Burks v. Lasker*, 441 U.S. 471, 478 (1979)).

[4] *See infra* at 20-21.

stock alleged to be injured by the wrongs, is an unconstitutional one"). Gusinsky has no settled expectation that a shareholder with less than 0.00002% of Southwest's stock and an apparent history of filing serial shareholder lawsuits should be able to override the elected Board's authority to make policy decisions for the other 99.99998% of Southwest's shareholders. The Court should reject this groundless request to override a valid Texas statute.

## II.    STATEMENT OF FACTS

Southwest is a Dallas-based airline incorporated under Texas law. (*See* Compl. ¶ 27.) On April 28, 2025, Gusinsky served a derivative demand (the "Demand Letter") upon Southwest's Board of Directors (the "Southwest Board"). (App. 0008-0018, Ex. 1, Demand Letter.) The Demand Letter asserted that Southwest's officers and directors breached their fiduciary duties by making a business decision to rescind Southwest's "Bags Fly Free" policy and to start charging for bags, as most other airlines already do. (*See id.*) Gusinsky asserted that Southwest's prior market analysis indicated that changing the policy would harm Southwest's financial performance. (*See id.*)

On May 14, 2025, Governor Abbott signed SB 29 into law. The bill passed with overwhelming bipartisan majorities in both houses, with a 29-2 affirmative vote in the Texas Senate, a 109-7 vote on an amended version in the Texas House, and a 30-1 vote in the Senate concurring with the House amendments.[5] Under SB 29, now codified as Section 21.552(a)(3) of the Texas Business and Organizations Code ("TBOC"), corporations have the right to adopt bylaws establishing a minimum ownership threshold, not to exceed 3 percent, required for a shareholder to institute a derivative proceeding. TEX. BUS. ORG. CODE § 21.552(a)(3). Because SB

---

[5] *See* App. 0103, Ex. 2, House Journal; App. 0174, Ex. 3, Senate Journal.

29 was approved by greater than a two-thirds majority, it took effect immediately upon signing.[6]

SB 29 reflects a policy decision by Texas' elected representatives that limiting derivative suits to larger shareholders is in the public interest. In a press release issued by the Office of the Texas Governor upon signing SB 29 and two additional bills, Governor Abbott commented:

> "Texas is the reigning and undisputed champion for doing business in the United States of America. There is a difference between becoming a champion and repeating as a national champion year after year. To remain at the highest level requires constant innovation and improvement, and that is what we constantly work at to keep Texas as the best business climate in America. Senate Bill 29 provides business decision makers the certainty that sound business judgments made in the best interest of shareholders will not be second-guessed by courts. Business decisions are to be made by the elected officers and shareholders, not by unelected judges. These three laws will solidify our status as the best state for doing business for many years to come."[7]

The Senate and House Committee Reports likewise confirmed that SB 29 was adopted to bolster the Texas economy. (*See* App. 0220, Ex. 4, Senate Committee Report (stating that SB 29 "sets fair thresholds for shareholder actions" and "balance[es] economic growth with accountability for shareholders and everyday Texans"); App. 0232, Ex. 5, House Committee Report (stating that SB 29 "seeks to make Texas an attractive legal home for businesses by reforming statutory provisions governing certain business entities and enhancing the predictability and efficiency of Texas entity law and governance while maintaining strong protections for entity owners and transparency")).

On May 16, 2025, as authorized by SB 29, Southwest's directors unanimously approved an amendment and restatement of Southwest's Bylaws that included the following provision:

---

[6] *See* S.B. 29, 89th Leg. § 27 (2025) ("This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution.").

[7] *See* May 14, 2025 Press Release, "Governor Abbott Signs Pro-Growth Business Legislation Into Law," available at https://gov.texas.gov/news/post/governor-abbott-signs-pro-growth-business-legislation-into-law (also attached as App. 0291-0295, Ex. 9 hereto). Southwest requests that the Court take judicial notice of the press release.

> No shareholder may institute or maintain a derivative proceeding unless that shareholder is a Shareholder (as defined in Section 21.551(2) of the Texas Business Organizations Code) that beneficially owns at least three (3) percent of the outstanding shares of the corporation.

(App. 0267-68, Ex. 6, Southwest Bylaws, Art. II, Sec. 16 (the "Three Percent Bylaw").) The Southwest Board adopted the new bylaw provisions pursuant to its authority under TEX. BUS. ORG. CODE § 21.057(c) and as permitted by Southwest's Certificate of Formation. (*See* App. 0275, Ex. 6, Southwest Bylaws, Art. VII, Sec. 4; App. 0281-85, Ex. 7, Southwest Restated Certificate of Formation.) Southwest then publicly announced the provisions in a Form 8-K filing with the SEC. (App. 0289, Ex. 8, May 16, 2025 Form 8-K.)

On June 27, 2025, Southwest responded to Gusinsky's Demand Letter on behalf of the Board, stating that the claims lacked merit, that the Board's decision to modify the Bags Fly Free policy was protected by the business judgment rule, that bringing suit would not serve the interests of Southwest' shareholders, and that Gusinsky lacked standing to bring suit in light of SB 29 and the Three Percent Bylaw. (*See* Compl. ¶ 15; App. 0296-98, Ex. 10, June 27, 2025 Response Letter.)

Gusinsky filed suit on July 10, 2025—nearly two months after Governor Abbott signed SB 29 and after Southwest adopted the Three Percent Bylaw. Gusinsky openly pleads that he owns only 100 shares of Southwest common stock, which he admits is far less than the three percent of Southwest's current outstanding shares required to institute or maintain a derivative proceeding under Southwest's Bylaws. (*See* Compl. ¶¶ 26, 85) (admitting that Gusinsky would need to own more than 17 million shares to satisfy Three Percent Bylaw.) By Gusinsky's own admission, he owns ***fewer than 0.00002% of Southwest's common shares***, yet his lawsuit seeks to override the judgment of a Board of Directors elected by a majority of the other 99.99998% of Southwest's shareholders and of an elected Legislature that represents 31 million Texans. Thus, Gusinsky brings this proceeding in violation of the express will of both Texas' and Southwest's elected

representatives.

### III.    LEGAL STANDARDS

Under Fed. R. Civ. P. 12(b)(1), a claim must be dismissed if the court does not have subject matter jurisdiction over the dispute. The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012). Thus, the plaintiff bears the responsibility of clearly alleging facts demonstrating that a judicial resolution by that court is appropriate. *See Renne v. Geary*, 501 U.S. 312, 316 (1991). A federal court is presumed to lack subject matter jurisdiction "unless the contrary appears affirmatively from the record." *Id*. (quotations omitted). A plaintiff cannot "maintain an action in federal court" without Constitutional standing under Article III. *Wendt v. 24 Hour Fitness USA, Inc.*, 821 F.3d 547, 550 (5th Cir. 2016). Article III standing has three elements: "(1) the plaintiff must have suffered an 'injury in fact'; (2) traceable to the defendant's alleged conduct; and (3) that likely would be redressed by a favorable decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Where a plaintiff cannot establish standing, dismissal is proper under Rule 12(b)(1). *Pelletier v. Victoria Air Conditioning, Ltd*., 780 F. App'x 136, 139 (5th Cir. 2019).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a party must plead factual allegations sufficient to state a claim that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Rule 23.1 sets forth additional requirements for shareholder derivative claims, including (but not limited to) an obligation "to allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law" and to demonstrate that the plaintiff "fairly and adequately represents" the interests of the corporation. Fed. R. Civ. P. 23.1. As a rule of civil procedure, "Rule 23.1 cannot be understood to 'abridge, enlarge or modify any substantive right.'" *Kamen*, 500 U.S. at 96

(quoting 28 U.S.C. § 2072(b)). Courts must apply the limitations imposed on derivative suits by state law. *See id.* at 100-12 (applying state law rules regarding pre-suit demand); *Ezell v. Dinges*, 137 F.4th 291, 301 (5th Cir. 2025) (same); *In re Parkcentral Global Litig.*, 2010 WL 3119403, at *4 (N.D. Tex. Aug. 5, 2020) (applying Texas law to "matters relating to [an entity's] membership or ownership interests") (citing TEX. BUS. ORG. CODE §§ 1.104-05); *In re Life Partners Holdings, Inc.*, 2015 WL 8523103, at *6 (W.D. Tex. Nov. 9, 2015) (applying TBOC standards for dismissing derivative case based on director committee inquiry); *Marron v. Ream*, 2006 WL 2734267, at *3 (S.D. Tex. May 5, 2006) (applying pre-codified Texas standing requirements in dismissing derivative complaint). Failure to comply with the TBOC thus compels dismissal.

## IV.    ARGUMENT AND AUTHORITIES

This motion raises pure questions of law based on Gusinsky's own allegations and the public record. The Court may take judicial notice of the Three Percent Bylaw and consider it in deciding the motion, as the bylaw is quoted in the Complaint and is the express target of Gusinsky's declaratory judgment request. *See* Compl. ¶ 79 (quoting Three Percent Bylaw); *Morice v. Hospital Service Dist. #3,* 2020 WL 730323, at *3 n. 21 (E.D. La. Feb. 13, 2020) (considering bylaws on motion to dismiss that were referenced in complaint and integral to claim). The Court may also consider the legislative record of SB 29 and Governor Abbott's press release upon signing, which was made on a Texas government website, as well as Gusinsky's prior litigation history. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (court may consider "publicly available documents and transcripts" from government agency on motion to dismiss); *Guardian Flight LLC v. Health Care Service Corp.*, 735 F. Supp. 3d 742, 747 n. 1 (N.D. Tex. 2024) (judicially noticing Congressional Record); *Crittendon v. Health and Human Servs. Comm.*, 2023 WL 3483358, at *1 n. 1 (W.D. Tex. Apr. 13, 2023) ("The Court may take judicial notice of Plaintiff's other lawsuits as a matter of public record"). Defendants request judicial notice of these documents.

**A. Gusinsky's Complaint Should Be Dismissed Because It Is Barred by SB 29 and the Three Percent Bylaw**

Gusinsky admits that he "brings this action derivatively in the right and for the benefit of Southwest" and that "Southwest is named as a nominal defendant solely in a derivative capacity." (Compl. ¶ 92.) Accordingly, Gusinsky must meet the statutory requirements for derivative actions. Under SB 29, "a shareholder may not institute or maintain a derivative proceeding" unless:

> for a corporation with common shares listed on a national securities exchange or a corporation that has made an affirmative election to be governed by Section 21.419 and has 500 or more shareholders, *at the time the derivative proceeding is instituted, the shareholder beneficially owns a number of the common shares sufficient to meet the required ownership threshold to institute a derivative proceeding in the right of the corporation* identified in the corporation's certificate of formation or bylaws, provided that the required ownership threshold does not exceed three percent of the outstanding shares of the corporation.

TEX. BUS. ORG. CODE § 21.552(a) & (a)(3) (emphasis added).

This statutory requirement and the Three Percent Bylaw unambiguously forecloses all of Gusinsky's claims. Gusinsky admits that Southwest's Board adopted the Three Percent Bylaw before he filed suit (*see* Compl. ¶ 79) and that Gusinsky's 100-share stake in Southwest does not come close to meeting the three-percent threshold for bringing a derivative claim under the Three Percent Bylaw (*see id.* ¶¶ 26, 85). Gusinsky also admits that Southwest is incorporated under Texas law and is traded on the New York Stock Exchange, meaning that Tex. Bus. Org. Code § 21.552(a)(3) applies. (*See* Compl. ¶ 27.) Because Gusinsky again admits that he is suing solely in a derivative capacity, and because the Three Percent Bylaw was adopted before he filed this action on July 10, 2025, his suit is facially barred by statute and by the Three Percent Bylaw.

**1.    SB 29 Does Not Exempt Shareholders Who Previously Served a Demand**

The fact that Gusinsky served the Demand Letter before Southwest adopted the Three Percent Bylaw is of no moment. A "derivative proceeding" is defined by law as "a *civil suit* in the right of a domestic corporation," and can only mean this lawsuit (which was filed on July 10), not

the Demand Letter. *See* TEX. BUS. ORG. CODE § 21.551(1) (emphasis added). SB 29 did not amend this definition. *See* S.B. 29, 89th Leg. (2025). In fact, Section 21.553(a) expressly differentiates between a "derivative proceeding" and a "written demand," making clear that a "derivative proceeding" cannot be filed until 90 days after a "written demand." *See* TEX. BUS. ORG. CODE § 21.553(a) ("A shareholder may not *institute a derivative proceeding* until the 91st day after the date *a written demand* is filed with the corporation . . . ."). Other portions of SB 29 similarly differentiate "filing" a "derivative proceeding" from "making" a "demand." *See, e.g.*, S.B. 29, 89th Leg. § 14 (2025) ("The corporation must serve a copy of the petition on the shareholder filing the derivative proceeding or making the demand"). Because the Legislature differentiated the terms "derivative proceeding" from "written demand," it would defy legislative intent to give them the same meaning. *See Fowler v. Gen. Ins. Co. of Am.*, No. 3:14-CV-2596-G, 2014 WL 5879490, at *3 (N.D. Tex. Nov. 13, 2014) (the rule against surplusage "encourages courts to give meaning to every word and phrase, avoiding any construction that would make a provision superfluous").

The Texas Supreme Court has also long emphasized that a legal claim is not a "suit" unless it is ***filed in court.*** *See Thomas v. Oldham*, 895 S.W.2d 352, 356 (Tex. 1995) (defining "suit" as "a demand of one's rights ***in court***") (emphasis added); *United Production Corp. v. Hughes*, 137 Tex. 21, 152 S.W.2d 327, 330 (1941) ("To constitute the proceeding 'a suit' or 'action,' in any legal sense, ***it is essential that it rest in a court, with the power to hear it***") (emphasis added). This is consistent with the dictionary definition and commonly-understood meaning of "suit." *See* Black's Law Dictionary (12th ed. 2024) (defining "suit" as "[a]ny proceeding by a party or parties against another ***in a court of law***" (emphasis added).) Thus, by its own unambiguous meaning, the term "civil suit" as used in the TBOC definition of "derivative proceeding" means a lawsuit filed in court, not merely a demand letter. *See United States v. Moore*, 71 F.4th 392, 395 (5th Cir. 2023),

*cert. denied*, 144 S. Ct. 551 (2024) ("When interpreting statutory language, words are given their ordinary, plain meanings, and language must be enforced unless ambiguous."); *Burgess v. United States*, 553 U.S. 124, 131 (2008) (explaining when interpreting a statute "[a]s a rule, [a] definition which declares what a term 'means' ... excludes any meaning that is not stated") (citation omitted).

In light of the Legislature's express differentiation of the word "demand" from the word "suit," as well as the requirement that a "suit" be filed in court and the Legislature's determination that SB 29 would take effect immediately, there is no basis to conclude that the Texas Legislature did not intend for SB 29 to bar suits by shareholders who had already made a written demand. SB 29 was passed by more than two-thirds of the votes in both the Texas House and Senate, which, by its ***own terms***, made SB 29 effective immediately. *See* S.B. 29, 89th Leg. § 27 (2025) ("This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, . . ."). The Legislature could have set the effective date as September 1, 2025, which it regularly does for new legislation. Instead, the Legislature opted for SB 29 to take effect immediately. Section 26 of SB 29 further states that TBOC Section 21.552(a), as amended, applies "only to a derivative proceeding instituted on or after the effective date of this Act." S.B. 29, 89th Leg. § 26 (2025). Had the Legislature wanted to allow suits by sub-three-percent shareholders who had served demand letters before SB 29's enactment, the Legislature could have done so, but it did not. Thus, SB 29's plain language belies any legislative intent to allow lawsuits by shareholders who sent demand letters but did not file suit before SB 29 became effective. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010) (when interpreting statute, courts will "assum[e] that the ordinary meaning of that language accurately expresses the legislative purpose"); *see also CANarchy Craft Brewery Collective, L.L.C. v. Texas Alcoholic Beverage Comm'n*, 37 F.4th 1069, 1077 (5th Cir. 2022) ("It is the Legislature's prerogative to

- 11 -

enact statutes; it is the judiciary's responsibility to interpret those statutes according to the language the Legislature used . . . .").

### 2.    Dismissal Is Thus Proper

The Court should thus dismiss this suit under Rule 23.1, Rule 12(b)(6), Rule 12(b)(1), and/or based on application of the TBOC and Three Percent Bylaw. Once again, derivative complaints must comply both with federal pleading requirements under Rule 23.1 and the requirements of state law, including the TBOC. *See supra* at 7-8; *Kamen*, 500 U.S. at 96; *Marron v. Ream*, 2006 WL 2734267, at *3. Some decisions have treated the failure to meet share ownership requirements as a defect in standing. *See, e.g., Lewis v. Knutson*, 699 F.2d 230, 238 (5th Cir. 1983) (analyzing dismissal of derivative complaint under Rule 12(b)(1) where shareholder did not meet share ownership requirement); *Gilbreath v. Horan*, 682 S.W.3d 454, 488-89 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (finding lack of subject-matter jurisdiction where plaintiff filed suit on behalf of LLC in which plaintiff had no ownership interest); *Sarandi v. Breu*, 2009 WL 2871049, at *3 (N.D. Cal. Sept. 2, 2009) (analyzing lack of shareholder status under Rule 12(b)(1)).

Other decisions have treated the failure to comply with state law prerequisites as grounds for dismissal under Rule 23.1, Rule 12(b)(6), or under the Texas statute itself. *See Ezell*, 137 F.4th at 300-01 (affirming dismissal under Rule 23.1 for failure to allege demand excusal); *In re American Apparel, Inc. S'holder Deriv. Litig.*, 2012 WL 9506072, at *36 (C.D. Cal. July 31, 2012) ("Failure to plead continuous stock ownership warrants dismissal under Rule 12(b)(6)"); *Marron*, 2006 WL 2734267, at *8 (granting dismissal under pre-codified Texas derivative statute and Rule 23.1). The Fifth Circuit has also observed that "[u]nlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011). Regardless of the pathway, Gusinsky's facial,

openly-alleged noncompliance with the Three Percent Bylaw requires dismissal on the pleadings.

### B. Gusinsky's Declaratory Judgment Claim Is Legally Groundless and Likewise Fails To Comply with the Texas Derivative Statute

Gusinsky's request for declaratory relief (Count II) likewise fails on the pleadings and is simply an unsupported desperation plea for the Court to override the express policy choice of Texas' elected representatives allowing companies to limit shareholder derivative actions to larger shareholders. Gusinsky asserts that the Three Percent Bylaw is itself a breach of the directors' fiduciary duties because it potentially insulates them from his suit, that it violates the "open courts" and "retroactivity" provisions in the Texas Constitution, and that it violates wholly unspecified principles of "contract" and "federal" law. (*See* Compl. ¶¶ 82-88, 109-11.)

These assertions are utterly meritless and easily dispatched. First, Gusinsky's declaratory judgment claim is itself a derivative claim that does not comply with the TBOC. Second, the fiduciary duty claim provides no basis in any event for invalidating the Three Percent Bylaw. And third, Gusinsky's cursory allegations about alleged "open courts," "retroactivity," "contract," "federal," and other purported rights are entirely groundless.

#### 1. The Declaratory Claim Does Not Satisfy the TBOC's Requirements for Shareholder Derivative Claims

As an initial matter, Gusinsky's declaratory judgment claim is itself a derivative claim that fails to comply with the TBOC. (*See* Compl. ¶¶ 92 (admitting that Gusinsky "brings this action derivatively in the right and for the benefit of Southwest" and that "Southwest is named as a nominal defendant solely in a derivative capacity"); 83 (contending that Three Percent Bylaw was adopted "in breach of Defendants' fiduciary duties); *Bridgewater v. Double diamond-Delaware, Inc.*, 2011 WL 1671021, at *7 n. 12 (N.D. Tex. Apr. 29, 2011) ("[C]ases analyzing claims by shareholders for breach of fiduciary duty by directors governed by the [TBOC] also state that such claims must be brought through derivative suits"); *Gearhart*, 741 F.2d at 721 (holding that

fiduciary duties are owed solely to the corporation, not stockholders, and that individual shareholders lack standing to sue over alleged fiduciary breaches by directors).

Not only does Gusinsky not satisfy the three-percent ownership as set forth in Section A, but he also does not and cannot allege that he made a pre-suit demand on Southwest's Board regarding the validity of the Three Percent Bylaw or the directors' alleged breaches of duty in adopting it. Even before SB 29, a shareholder of a Texas corporation was required to make a written demand on the corporation describing the act or omission at issue "with particularity" prior to instituting any derivative proceeding. *See* TEX. BUS. ORG. CODE § 21.553(a) ("A shareholder may not institute a derivative proceeding until the 91st day after the date a written demand is filed with the corporation setting forth with particularity the act, omission, or other matter that is the subject of the claim or challenge and requesting that the corporation take suitable action"); *In re Schmitz*, 285 S.W.3d at 455-59 (granting mandamus relief where derivative plaintiff did not adequately make a particularized pre-suit demand). Gusinsky's Demand Letter was sent before either SB 29 or the Three Percent Bylaw was adopted and does not mention them. Because Gusinsky does not allege that he served a pre-suit demand on Southwest that described the basis of his declaratory judgment claim with particularity, and because Gusinsky does not satisfy the Three Percent Bylaw for the reasons stated in the prior section, his declaratory relief claim fails.

### 2. The "Fiduciary Duty" Argument Fails

Gusinsky also provides no colorable statutory or common-law basis for overriding a bylaw adopted by Southwest's elected directors. The TBOC expressly permits directors to "amend or repeal bylaws or adopt new bylaws unless: (1) the corporation's certificate of formation or this code wholly or partly reserves the power exclusively to the corporation's shareholders; or (2) in amending, repealing, or adopting a bylaw, the shareholders expressly provide that the board of directors may not amend, repeal, or readopt that bylaw." TEX. BUS. ORG. CODE § 21.057(c).

- 14 -

Gusinsky does not allege that either exception (1) or exception (2) applies, nor does he identify any other statutory provision restricting the Board from adopting the Three Percent Bylaw. To the contrary, SB 29 *expressly authorized* Southwest's Board to impose a "required ownership threshold to instate a derivative proceeding in the right of the corporation" in Southwest's "bylaws, provided that the required ownership threshold does not exceed three percent of the outstanding shares of the corporation." TEX. BUS. ORG. CODE 21.552(a)(3). Gusinsky cites no authority holding that a single shareholder can void a Board-elected bylaw—especially one expressly authorized in the TBOC—merely by claiming the directors made it more difficult to pursue derivative claims against them. Restricting derivative suits was precisely the point of SB 29. Again, if the Legislature wanted to restrict the ability of directors to adopt ownership thresholds after a demand letter, it could have done so. Under the TBOC's plain language, the Three Percent Bylaw is enforceable.

Even if a single shareholder could sue to override a bylaw that is expressly permitted by the TBOC, there is no basis under Texas law to conclude that the directors breached their duties merely by adopting a higher ownership threshold for derivative cases after receiving a demand. Texas law already rejects the proposition that directors are conflicted from considering a derivative demand merely because the demand (or suit) accuses the directors of misconduct and asks them to "sue themselves." *See Pace v. Jordan*, 999 S.W.2d 615, 624 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) ("The mere fact that [plaintiffs] made claims against all of the directors does not create a genuine issue of material fact as to the disinterestedness and independence of the board"). If the possibility of being sued is insufficient to "conflict" a Board with respect to their consideration of a demand to sue themselves, it follows that simply adopting a bylaw that increases the ownership threshold for potential derivative plaintiffs cannot be a breach of duty.

Further, using the guise of a fiduciary duty claim to override a legislatively-approved

bylaw, on the theory that merely doing what Texas' elected representatives expressly authorized the directors to do is a breach of duty, would "upset the Legislature's careful balance of policies and interests." *See Ritchie v. Rupe*, 443 S.W.3d 856, 880 (Tex. 2014) (holding that "when the Legislature has enacted a comprehensive statutory scheme, we will refrain from imposing additional claims or procedures" that would frustrate the statute's intent). There is no basis for imposing a common-law duty on Southwest's directors to refrain from doing what the Legislature has expressly authorized them to do. And, "[a]bsent a contractual or other legal obligation," directors have "no duty to conduct the corporation's business in a manner that suits an individual shareholder's interests when those interests are not aligned with the interests of the corporation and the corporation's shareholders collectively." *Id.* at 888-89. The Board owed no duty to Gusinsky—a single shareholder—to allow him to bring derivative claims after SB 29.

### 3. The Purported Constitutional, Contractual, and "Federal" Arguments Fail

Gusinsky appears to identify three other arguments against the application of the Three Percent Bylaw. First, he claims it would violate the Texas Constitution's "open courts" provision. Second, he claims it would violate the Texas Constitution's prohibition on retroactive laws. Third, he references without elaboration Texas contract law and "federal" law. Each argument fails.

### a. Gusinsky's "Open Courts" Argument Is Meritless

Gusinsky's assertion that SB 29 violates the Texas Constitution's "open courts" clause is wholly without merit. "When a court reviews the constitutionality of a statute, it presumes that the statute is valid. *HL Farm Corp. v. Self*, 877 S.W.2d 288, 290 (Tex. 1994); *see also Smith v. Davis*, 426 S.W.2d 827, 831 (Tex. 1968) ("The wisdom or expediency of the law is the Legislature's prerogative, not ours"); *Texas Nat'l Guard Armory Board v. McCraw*, 126 S.W.2d 627, 634 (Tex. 1939) ("There is a strong presumption that a Legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and

that its discriminations are based upon adequate grounds").

SB 29 does not violate the "open courts" clause. *See Johnson ex rel. MAII Holdings, Inc. v. Jackson Walker, L.L.P.*, 247 S.W.3d 765, 780 (Tex. App.—Dallas 2008, pet. denied) (rejecting "open courts" challenge to a prior version of derivative statute). The "open courts" clause provides that "every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. By definition, however, a shareholder derivative action is not a suit by a "person" to redress "an injury done him, in his lands, goods, person or reputation," but is instead an action to redress purported injuries done ***to the corporation***. *See Gearhart*, 741 F.2d at 721 ("[W]e note that Smith lacks standing at this time to assert claims against Gearhart's directors for breaches of their fiduciary obligations. This is so because such allegations may be advanced only in a shareholder's derivative suit. . . . The reason behind this requirement is that the directors' duties of loyalty and care run to the corporation, not to individual shareholders or even to a majority of the shareholders"); *Matter of Estate of Poe*, 648 S.W.3d 277, 289 (Tex. 2022) ("A director's fiduciary duty in the management of a corporation is solely for the benefit of the corporation"); *Grinnell v. Munson*, 137 S.W.3d 706, 718 (Tex. App.—San Antonio 2004, no pet.) ("[T]he right to proceed against an officer or former officer of a corporation for breaching a fiduciary duty owed to the corporation belongs to the corporation itself"). By its terms, the open courts provision does not apply to statutory restrictions on derivative suits, which redress corporate injuries and not injuries to individual shareholders. *See Johnson*, 247 S.W.3d at 780.

### b.    Gusinsky's "Retroactivity" Argument Is Equally Groundless

SB 29 likewise does not violate any purported constitutional prohibition on "retroactivity." Again, this suit was not filed until ***after*** SB 29 was enacted and ***after*** the Three Percent Bylaw was adopted. It does not retroactively bar an already-pending lawsuit or extinguish an already-vested right, but instead applies "only to a derivative proceeding instituted on or after the effective date

- 17 -

of this Act." S.B. 29, 89th Leg. § 26 (2025). The Texas Supreme Court has only rarely invalidated statutes on retroactivity grounds, and only in situations involving "laws that revived expired claims or fully extinguished vested rights." *DeJoria v. Maghreb Petroleum Exploration, S.A.*, 935 F.3d 381, 389 (5th Cir. 2019). Impermissible retroactivity will not be found when a party had no "settled" expectation of receiving a benefit before the new law. *See Hogan v. Southern Methodist Univ.*, 688 S.W.3d 852, 860-863 (Tex. 2024) (rejecting constitutional "retroactivity" challenge to pandemic-related statute and emphasizing the need for plaintiffs to show a "settled expectation" to relief prior to the enactment); *Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 58 (Tex. 2014) (rejecting challenge because the plaintiff's "recovery was not yet predictable" at the time the law went into effect). In assessing retroactivity challenges, courts also assess the nature and strength of the public interest served by the statute, the nature of the prior right impaired, and the extent of impairment. *See Robinson v. Crown Cork & Seal Co., Inc.*, 335 S.W.3d 126, 145-46 (Tex. 2010).

Gusinsky had nothing remotely approaching a "settled" expectation of recovery before SB 29's enactment, which does not impair any personal right belonging to Gusinsky, allows larger shareholders and elected directors to continue pursuing claims on the company's behalf, and serves a significant policy interest of restricting abusive lawyer-driven shareholder suits and promoting economic growth. *See id.* **First**, the claims at issue here **belong to Southwest, not to Gusinsky**— and thus are not capable of vesting in Gusinsky. *See Grant Me Wisdom Found., Inc. v. Boyar*, No. 14-23-00849-CV, 2025 WL 478189, at *9 (Tex. App.—Houston [14th Dist.] Feb. 13, 2025, pet. denied) ("[A] derivative action is one in which a corporate shareholder 'steps into the shoes of the corporation' to pursue the corporation's claims."); *Hanson v. Odyssey Healthcare, Inc.*, 2007 WL 5186795, at *5 (N.D. Tex. Sept. 21, 2007) (shareholder who files derivative proceeding "is at best a nominal plaintiff," as "[t]he corporation is the real party in interest"); *see also Pace*, 999 S.W.2d

at 622 (explaining that derivative claims "belong to the corporation"). The "nature" of the right is one that does not belong to Gusinsky in the first place. *See Robinson*, 335 S.W.3d at 145-46.

**Second**, the "extent" of any purported impairment is minimal. *See id.* Again, the "right" allegedly being impaired belongs to Southwest itself. Texas law already provides that "***a corporation should be run by its board of directors, not a disgruntled shareholder or the courts.***" *In re Schmitz*, 285 S.W.3d at 459 (emphasis added); *Pace*, 999 S.W.2d at 622 ("A corporation's directors, not its shareholders, have the right to control litigation of corporate causes of action. . . . Thus, the corporation, through its board of directors, determines whether the chances for a successful suit, the costs of maintaining a suit, and other factors militate in favor of instituting such an action"). Nothing in SB 29 restricts Southwest's Board from exercising these powers. It is also well-settled that larger shareholders are fully aligned economically with smaller shareholders in maximizing the value of the enterprise and, if anything, have a stronger economic interest in redressing alleged economic injuries to Southwest because of their larger proportionate share. *See Gonzalez v. UniversalPegasus Int'l Inc.*, 531 S.W.3d 276, 288 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (rejecting argument that larger shareholders have conflicts with smaller shareholders and citing Delaware authority). Thus, if there were any merit to Gusinsky's assertion that changing the "Bags Fly Free" policy was a breach of fiduciary duty that caused injury to Southwest, larger shareholders would be incentivized to take action. The TBOC also defines "Shareholder" to include "two or more shareholders acting in concert," so Gusinsky could join with other shareholders to meet the three-percent requirement if other shareholders were interested in pursuing the claims. *See* Tex. Bus. Org. Code § 21.551(2)(C). There is no "impairment."

**Third**, Gusinsky had no settled expectation of any recovery on his derivative claims under the pre-SB 29 statute—a recovery that again would go ***to Southwest***, not to Gusinsky. Indeed, the

90-day waiting period under TEX. BUS. ORG. CODE § 21.553(a) for Gusinsky to bring a derivative claim had not expired when the Three Percent Bylaw was adopted. Southwest moreover was entitled under the pre-SB 29 TBOC to form a committee of independent directors to investigate Gusinsky's claims and determine whether Southwest should pursue them or seek dismissal, with any subsequent motion for dismissal to be decided under an extremely deferential standard. *See* TEX. BUS. ORG. CODE § 21.558 (providing that courts "shall dismiss" derivative cases if independent committee "determines in good faith, after conducting a reasonable inquiry and based on factors the person or group considers appropriate under the circumstances, that continuation of the derivative proceeding is not in the best interests of the corporation"); *Johnson*, 247 S.W.3d at 772, 776-77 (affirming dismissal based on pre-codified version of Texas statute); *Rosenthal v. Morris*, 2006 WL 8438449, at *1-2 (N.D. Tex. Aug. 21, 2006) (Means, J.) (same). As well, Gusinsky's suit attacks a corporate policy decision—whether to charge passengers for bags—that falls squarely within the directors' protected business judgment. *See Sneed v. Webre*, 465 S.W.3d 169, (Tex. 2015) ("The business judgment rule in Texas generally protects corporate officers and directors, who owe fiduciary duties to the corporation, from liability for acts that are within the honest exercise of their business judgment and discretion"). Gusinsky thus had no settled expectation that an independent director committee would not validly determine that his claims should not be pursued, let alone that a court would override such a determination and render judgment against the individuals. *See Union Carbide*, 438 S.W.3d at 58 (no impermissible retroactively when plaintiff's "recovery was not yet predictable" before law went into effect).

*Fourth*, Gusinsky had no settled expectation that Southwest would never amend its bylaws to further restrict derivative lawsuits. As Judge Gray Miller explained in rejecting a shareholder challenge to a mandatory venue bylaw for derivative suits, shareholders have no right to expect

- 20 -

that corporate bylaws will remain unchanged in perpetuity when, as here, ***the company's governing documents expressly allow its Board to amend or adopt new bylaws unilaterally***. *See Butorin v. Blount*, 106 F. Supp. 3d 833, 842 (S.D. Tex. 2015) (Miller, J.) (holding that shareholders had "no vested rights" that bylaws relating to derivative suits would not change); Tex. Bus. Org. Code § 21.057(b) and (c) (allowing Boards to "amend or repeal bylaws or adopt new bylaws" unless restricted by the company's Certificate of Formation or shareholder vote, and providing that bylaws may contain any provisions "that are consistent with law and the corporation's certificate of formation"); *see* App. 0275, Ex. 6, Southwest Bylaws, Art. VII, Sec. 4; App. 0281-85, Ex. 7, Southwest Restated Certificate of Formation) (containing no restriction on Board's authority to adopt bylaws).

In other words, the possibility that a Board may amend the bylaws or adopt new bylaws— even ones that significantly restrict the ability to pursue derivative claims—is "part of the deal" a shareholder accepts when they purchase stock. This is true regardless of whether the Board adopts the new bylaw after some purported "wrongdoing" occurred. *See Butorin*, 106 F. Supp. 3d at 842-43 (emphasizing that shareholders already had notice that bylaws could be amended). The alleged occurrence of such wrongdoing provides no basis to invalidate the bylaw—which itself did not alter any fiduciary duty or what type of conduct might or might not breach such a duty, but rather only amended the share ownership required to sue derivatively for such a purported breach. *See id.* And it is long-settled that bylaws are binding on shareholders. *See, e.g., Overland Auto. Co. v. Cleveland*, 250 S.W. 453, 455 (Tex. Civ. App.-Dallas 1923, writ dism'd w.o.j.) ("The stockholders and the corporation between themselves must abide by the articles of association and the by-laws"); *Ainsworth v. Sw. Drug Corp*., 95 F.2d 172, 173 (5th Cir. 1938) ("[T]he charter and by-laws of a corporation constitute a contract between the company and its shareholders."). The nature

of a derivative "right" is, by definition, fluid and controlled by the Board.

*Fifth*, Gusinsky had no settled expectation the Legislature would not amend the TBOC to authorize additional restrictions on derivative suits. Indeed, the TBOC was ***previously*** amended to allow companies to obtain dismissal of derivative claims by having independent directors conduct their own investigation of the demand, which itself severely curtailed individual shareholders' ability to pursue derivative suits, thus disabusing shareholders of any "settled" expectation that no such amendments could ever be made. *See* TEX. BUS. ORG. CODE § 21.558; *Johnson*, 247 S.W.3d at 772, 776-77 (affirming dismissal based on pre-codified version of Texas statute); *Rosenthal v. Morris*, 2006 WL 8438449, at *1-2 (N.D. Tex. Aug. 21, 2006) (Means, J.) (same)*. Again, "**[t]he very nature of the stockholder's derivative action makes it one in the regulation of which the legislature of a state has wide powers**," and "[n]o type of litigation is more susceptible of regulation than that of a fiduciary nature." *Cohen*, 337 U.S. at 549 (emphasis added). Gusinsky has no settled expectation these "wide powers" would not be used again.

The concept that the threshold for derivative litigation could be changed to limit suits by shareholders with smaller economic interests is also consistent with longstanding precedent. The Supreme Court has previously recognized that state legislatures can treat potential derivative claimants differently based on the size of their interest. *See Cohen*, 337 U.S. at 552-53 ("[W]e are unable to say that a classification for these purposes, based upon the percentage or market value of the stock alleged to be injured by the wrongs, is an unconstitutional one"). And, as the Texas Supreme Court previously recognized, a board can take into account the shareholder's identity in considering how much weight to accord a demand. *See In re Schmitz*, 285 S.W.3d at 456-57, 459 ("The identity of the complaining shareholder may shed light on the veracity or significance of the facts alleged in the demand letter, and the Board might properly take a different course of action

depending on the shareholder's identity") (internal quotation marks and citation omitted). To the extent Gusinsky had any personal rights being impaired, courts have long recognized that legislatures and Boards can restrict them. *See Cohen*, 337 U.S. at 549-53.

      *Sixth*, the public interest considerations weighing in favor of SB 29 are strong. *See Hogan*, 688 S.W.3d at 862 ("Against this slightest of speculative private rights stands the right of Texans, through their elected representatives to enact legislation in the public interest"). As noted above, Texas' elected legislature determined that SB 29 was necessary to foster economic growth, attract business to Texas, and deter abusive lawsuits. (*See supra* at 4-5.) Texas courts have long recognized a strong policy interest in ensuring that companies are run by their elected directors, "not a disgruntled shareholder or the courts." *In re Schmitz*, 285 S.W.3d at 459. And, "[n]o type of litigation is more susceptible of regulation" than shareholder lawsuits "of a fiduciary nature." *Cohen*, 337 U.S. at 549. Legislatures also have a strong interest in ensuring that shareholder suits are investor-driven rather than "lawyer-driven," which led Congress to adopt restrictions on federal securities class actions. *See In re Kosmos Energy Ltd. Secs. Litig.*, 299 F.R.D. 133, 139 (N.D. Tex. 2014) (describing Congress's intent to discourage "lawyer-driven litigation" (internal citation omitted); *In re Schmitz*, 285 S.W.3d at 456 (describing abuses leading to federal reform).

      *Seventh*, Gusinsky's own litigation history further undermines any expectation he had to usurp the decision-making authority of Southwest's Board or override the policy prerogatives of Texas' elected representatives. Courts have criticized the practice of shareholder plaintiffs with small economic stakes in numerous companies acting as serial filers of shareholder class and derivative lawsuits. *See, e.g., Melder v. Morris*, 27 F.3d 1097, 1099 n. 2 (5th Cir. 1994) (noting "suspect background of one of the 'plaintiffs'" who had filed 38 prior securities fraud suits); *In re Schmitz*, 285 S.W.3d at 456 (describing abusive practices leading to federal reform); *In re Kosmos*,

299 F.R.D. at 139 (N.D. Tex. 2014) (describing Congress's intent to discourage "the use of 'professional plaintiffs'" to file abusive lawsuits) (internal citation omitted). It is plainly the prerogative of legislative bodies to restrict these practices, including by enacting restrictions based on the size of a plaintiff's economic interest. *See Cohen*, 337 U.S. at 552-53. Defendants respectfully note that an individual named "Vladimir Gusinsky" and/or entities called the "Vladimir Gusinsky Revocable Trust" (the "VGRT") and the "Vladimir Gusinsky Living Trust" ("VGLT") have filed ***more than 30 prior shareholder lawsuits*** involving other companies.[8] In one case, Judge Sam Sparks denied—and severely criticized—a motion by "Vladimir Gusinsky" and other plaintiffs to obtain $2.85 million in attorneys' fees in return "for obtaining a minimal (if not non-existent) benefit to" the company. *See In re Cirrus Logic, Inc.*, 2009 WL 10670041, at *7-9 (W.D. Tex. Jan. 8, 2009) (criticizing plaintiffs' "great exaggeration of the benefits" to the company of the proposed settlement, remarking that "the Court simply cannot fathom . . . how counsel feels they could have earned" the requested "top-dollar" $2.85 million fee "for their inability to be successful in this case"); App. 1138-57, Ex. 12 (motion filed by "Vladimir Gusinsky" and other plaintiffs that was rejected in January 8, 2009 opinion). Gusinsky's litigation history raises significant questions about his adequacy as a derivative plaintiff and his ability to oversee counsel. *See In re Kosmos*, 299 F.R.D. at 145 (stressing requirement under similar class action adequacy standard that it is the plaintiff, "not the lawyers," who are "directing the litigation"). Gusinsky had

---

[8] *See Vladimir Gusinsky Revocable Trust v. Hayes*, 2025 WL 1517442, at *1-4 (Del. May 28, 2025) (affirming dismissal of derivative suit filed by VGRT); *Panella v. Tesco Corp.*, 2019 WL 1606349, at *1 (S.D. Tex. Mar. 29, 2019) (noting that VGRT had filed shareholder suit consolidated with pending action, and granting motion to dismiss); *Gusinsky v. Flanders Corp.*, 2013 WL 5435788, at *1, 11 (N.C. Sup. Sept. 25, 2013) (dismissing derivative suit filed by "Plaintiff Vladimir Gusinsky, as Trustee for the [VGLT]"); *see also* App. 0299-1137, Ex. 11 (showing ***more than 30 shareholder class or derivative cases*** filed by VGRT or VGLT).

no settled expectation that he would be permitted to bring a derivative claim. His Constitutional challenges are meritless.

### c.    Gusinsky Has No Other Basis For a Declaratory Claim

To the extent Gusinsky's conclusory references to unspecified "contract," "federal," or other rights or grounds for invalidating the Three Percent Bylaw are intended to state a claim, they fail for the same reasons in subsections (a) and (b). The "contract" formed by Southwest's bylaws made clear that the Board had the right to change it. (*See* App. 0275, Ex. 6, Southwest Bylaws, Art. VII, Sec. 4) ("[T]he Board of Directors may amend or repeal these Bylaws, or adopt new bylaws . . . ."). The Supreme Court has emphasized that state legislatures have "wide powers" to regulate derivative suits, belying any purported "federal" right to pursue derivative suits without restrictions. *See Cohen*, 337 U.S. at 549. Gusinsky offers no factual or legal grounds for invalidating SB 29 or the Three Percent Bylaw. *See Twombly*, 550 U.S. at 555 (pleading "labels and conclusions" insufficient to survive dismissal). At bottom, Gusinsky's real complaint is with the judgment of the elected representatives of Texas in deciding to enact SB 29—which they did by supermajorities in both legislative chambers—and of Southwest's directors in adopting the Three Percent Bylaw—after having been elected by the collective vote of 99.99998% of Southwest's shareholders and duly authorized to adopt the three-percent threshold by the Texas legislature. Policy disagreements with elected bodies do not suffice to allow nullification of a statute or bylaw. *See Smith*, 426 S.W.2d at 831.

### V.    CONCLUSION

Gusinsky pleads no basis for a valid claim. For the reasons set forth herein, Defendants respectfully request that Gusinsky's Complaint be dismissed in its entirety, with prejudice.

- 25 -

Dated:  August 25, 2025                    NORTON ROSE FULBRIGHT US LLP


By:  */s/ Peter A. Stokes*
    Michael A. Swartzendruber
    State Bar No. 19557702
    michael.swartzendruber@nortonrosefulbright.com
    Madison W. Johnson
    State Bar No. 24132009
    madison.johnson@nortonrosefulbright.com
    2200 Ross Avenue, Suite 3600
    Dallas, Texas  75201-7932
    Telephone:      (214) 855-8000
    Facsimile:       (214) 855-8200

    Peter A. Stokes
    State Bar No. 24028017
    peter.stokes@nortonrosefulbright.com
    98 San Jacinto Boulevard, Suite 1100
    Austin, Texas  78701-4255
    Telephone:      (512) 474-5201
    Facsimile:       (512) 536-4598

    *Counsel for Defendants*


- 26 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on August 25, 2025, which caused an electronic copy of this document to be served on all counsel of record in this matter who have registered for ECF service.

*/s/ Peter A. Stokes*
Peter A. Stokes
