IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VLADIMIR GUSINSKY, derivatively on behalf of Nominal Defendant SOUTHWEST AIRLINES CO., | § § § § | |
| Plaintiff, | § § | Civil Action No. 3:25-CV-1816-K |
| v. | § § | |
| CHRISTOPHER P. REYNOLDS, DAVID CUSH, DAVID J. GRISSEN, DAVID P. HESS, DOUGLAS H. BROOKS, GREGG A. SARETSKY, LISA M. ATHERTON, PATRICIA A. WATSON, PIERRE R. BREBER, RAKESH GANGWAL, ROBERT E. JORDAN, ROBERT L. FORNARDO, SARAH FEINBERG, EDUARDO F. CONRADO, and ELAINE MENDOZA, | § § § § § § § § § § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Nominal Defendant Southwest Airlines Co. ("Southwest")

and Defendants' Motion to Dismiss Under Rule 12(b)(1), 12(b)(6), 23.1, and Based

Upon Statutory Bar and Bylaw and Brief in Support (the "Motion") (Doc. No. 17),

the Appendix Supporting Defendants' Motion (the "Appendix") (Doc. No. 18),

Plaintiff Vladimir Gusinsky's Opposition to Defendants' Motion (the "Response")

(Doc. No. 31), Defendants' Reply Brief in Support of the Motion (the "Reply") (Doc.

No. 44), and Plaintiff's Verified Stockholder Derivative Complaint (the "Complaint")

(Doc. No. 1). Having carefully considered the Motion, the Response, the Reply, the

1

Complaint, and appropriate portions of the Appendix, as well as the applicable law and the relevant portions of the record, the Court finds that Plaintiff's derivative claims are barred by Texas Senate Bill 29 ("SB 29"). Accordingly, the Court **GRANTS** the Motion and **DISMISSES WITH PREJUDICE** Plaintiff's derivative claims against Defendants.

## I.      Factual Background

Plaintiff Vladimir Gusinsky is a shareholder of Southwest. *See* Doc. No. 1 at 10, ¶26 (all citations to CM/ECF assigned page number unless otherwise noted). Gusinsky "is [the] beneficial owner of 100 shares of Southwest common stock" and has owned Southwest common stock since 2022. *Id.* Defendants are members of Southwest's Board of Directors (the "Board"). *Id.* at 10–12, ¶¶28–43.

Southwest previously implemented its "Bags Fly Free" policy. *Id.* at 13, ¶49. Under this policy, passengers could check up to two bags without additional fees. *Id.* According to Plaintiff, "Southwest's adherence to its founding principles and Bags Fly Free has allowed [Southwest] to achieve sustained profitability and shareholder returns." *Id.* at 14, ¶49. In September of 2024, Southwest published research purportedly establishing the profitability of the Bags Fly Free policy. *Id.* at 2, ¶2. Southwest executives stated that if the Bags Fly Free policy ended, Southwest would sustain an "[a]nnual EBIT loss" of approximately $300 million. *Id.* at 3, ¶2 (chart demonstrating financial impact of the Bags Fly Free policy).

However, in 2024, Elliott Investment Management L.P. ("Elliott") purchased

Southwest stock worth approximately $1.9 billion, an 11% ownership stake in Southwest. *Id.* at 3, ¶3. Upon notifying Southwest, Elliott sent a presentation to Southwest's Board. *See id.* at 14, ¶50. In this presentation, titled "Stronger Southwest," Elliott argued that "Southwest's leadership has written off key commercial innovations and revenue opportunities across the airline industry for the last 15 years[.]" *Id.* at 15, ¶51. Elliott stated that Southwest did not implement policies Elliott believes are commonplace in the airline industry, including assigned seating, basic economy, and *checked bag fees*. *Id.* (emphasis added). Elliott's message to Southwest's Board called out Defendant Robert E. Jordan, Southwest's CEO, arguing that Southwest's Board needed new directors from outside the company. *See id.* at 14, ¶50.

Worried about a takeover attempt, Southwest's Board adopted a "poison pill," which provided current shareholders the opportunity to purchase Southwest stock at a discount in the event a single shareholder acquired at least 12.5% stock ownership in Southwest. *Id.* at 15, ¶52. In July of 2024, Defendant/CEO Jordan stated that Southwest had no immediate plans to rescind its Bags Fly Free policy. *Id.* at 16, ¶54 ("[B]ags [F]ly [F]ree is cited as the number one issue in terms of why customers choose Southwest"). Southwest stated that Elliott "dismissed" Southwest's efforts to negotiate and "unilaterally" decided to publicly declare its plan to overhaul most of Southwest's Board. *Id.* at 17, ¶56.

Southwest continued to push back against Elliott, claiming that Elliott "refus[ed] to engage" with Southwest's 2024 Investor Day proposals and "has remained

3

entrenched in demanding a supermajority of the Board and immediate CEO change."
*Id.* at 18–19, ¶59. Southwest spoke boldly about Elliott: "The [Southwest] Board has repeatedly sought to [advance Southwest's business], but acquiescing to a single Shareholder's demand for absolute control of [Southwest] is not a compromise." *Id.* at 19, ¶59. In September of 2024, Ryan C. Green, Southwest's Executive Vice President of Commercial Transformation, stated that change to or elimination of the Bags Fly Free policy would be "value destructive." *Id.* at 21–22, ¶61.

In October of 2024, Elliott requested a shareholder meeting "to consider proposals to remove, without cause, eight members of the Board and replace with director nominees selected by Elliott, in an apparent effort to secure full control of the Board." *Id.* at 29, ¶67. Southwest opposed the move. *See id.* at 29–31, ¶68. However, Southwest and Elliott later entered into a "Cooperation Agreement" that (1) withdrew Elliott's request for a shareholder meeting, (2) terminated the poison pill, and (3) appointed six new directors, five of whom Elliott selected. *Id.* at 31, ¶69. Southwest also announced that "two incumbent directors would not stand for re-election" and "seven other directors, including the Chairman of the Board," would 'accelerate' their retirement[.]" *Id.*

Plaintiff alleges that, after Southwest's Board changed, Defendants approved new policies that "directly conflicted with [Southwest's] previous data-supported, customer-centric business model." *Id.* at 32, ¶70. Importantly, Defendants approved the elimination of the Bags Fly Free policy. *Id.* at 32, ¶71. Plaintiff alleges that

4

Defendants' action "was intended solely to further entrench current management at the expense of the best interests of [Southwest] and was in breach of [fiduciary duty]." *Id.* at 33, ¶74. Unhappy with Defendants' decision to eliminate the Bags Fly Free policy, Plaintiff served a demand letter on Defendants. *Id.* at 35–36, ¶78. In his demand letter, Plaintiff alleged that Defendants breached their fiduciary duties to Southwest by eliminating the Bags Fly Free policy and "entrench[ing] themselves." *Id.* at 36, ¶78.

On May 16, 2025, Defendants amended Southwest's bylaws (the "Amended Bylaws"). *Id.* at 36, ¶79. Pertinent to the present Motion, the Amended Bylaws state that "[n]o shareholder may institute or maintain a derivative proceeding unless that shareholder . . . beneficially owns at least three (3) percent of the outstanding shares of the corporation." *Id.* Two days before Defendants adopted the Amended Bylaws, Governor Greg Abbott signed SB 29 into law, effective immediately. Doc. No. 17 at 7. In part, SB 29 authorized Texas corporations to institute a stock ownership threshold requirement for shareholder derivative actions. *See* TEX. BUS. ORGS. CODE ANN. § 21.552(a)(3) (provision added by SB 29). On June 27, 2025, Defendants responded to Plaintiff's demand letter by refusing to take any action on the demand. *See* Doc. No. 1 at 37, ¶80.

Subsequently, Plaintiff filed this derivative suit against Defendants in federal court, alleging that Defendants breached their fiduciary duties to Southwest by "fail[ing] to act in the best interests of [Southwest], eliminat[ing] the Bags Fly Free policy, approv[ing] the 2025 Proxy Statements, and adopt[ing] the [Amended Bylaws]

to entrench themselves." *Id.* at 42, ¶105. Specifically, Plaintiff claims that Defendants breached their fiduciary duties by (1) eliminating the Bags Fly Free policy while knowing that the policy's elimination would harm Southwest and (2) by subsequently adopting the Amended Bylaws in order to shield themselves from accountability for eliminating the policy. *Id.* at 42, ¶¶105–106. Plaintiff also seeks a declaratory judgment that the Amended Bylaws are unlawful and unconstitutional. *See id.* at 43, ¶¶109–111. Along with that, Plaintiff makes an as-applied constitutional challenge to SB 29 and Texas Business Organizations Code Section 21.552(a)(3), claiming that SB 29 and Section 21.552(a)(3) violate the Texas Constitution. *See* Doc. No. 41 (Plaintiff's Rule 5.1 Notice of Constitutional Question). Plaintiff alleges that SB 29 and the Amended Bylaws violate the Texas Constitution's prohibition against retroactive application of law, its open courts provision, and Texas contract law. Doc. No. 1 at 43, ¶109.

In response to Plaintiff's Complaint, Defendants filed the present Motion, to which Plaintiff filed his Response and Defendants filed their Reply. Therefore, the Motion is now ripe for determination.

## II.    Legal Standard

Defendants move for dismissal under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 23.1. However, the Court will determine the present Motion only under Rule 12(b)(6).

In considering a motion to dismiss under Rule 12(b)(6), the court must determine whether the plaintiff has sufficiently stated a claim upon which relief may

6

be granted. FED. R. CIV. P. 12(b)(6). The court must presume all well-pleaded facts in the complaint to be true and it must resolve any ambiguities or doubts regarding the sufficiency of the claims in plaintiff's favor. *Kane Enters. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (although the court must take as true all of the factual allegations in the complaint, it is not bound to accept as true a legal conclusion couched as a factual allegation). In reviewing a motion to dismiss under Rule 12(b)(6), the court may only consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

A plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Kane Enters.*, 322 F.3d at 374 (plaintiff must plead specific facts, not mere conclusory allegations, to avoid dismissal for failure to state a claim). If a plaintiff pleads facts which allow the court to reasonably infer that the defendant is liable for the alleged misconduct, the claim is facially plausible. *See Twombly*, 550 U.S. at 570. While facial plausibility is not a "probability requirement," it mandates "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 556 ("[f]actual allegations must be enough

7

to raise a right to relief above the speculative level"). In other words, the alleged facts must nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

Because Plaintiff filed this case in federal court on the basis of diversity of citizenship jurisdiction under 28 U.S.C. § 1332 (*see* Doc. No. 1 at 9, ¶23), the Court will apply Texas substantive law. *See Block v. Tanenhaus*, 867 F.3d 585, 589 (5th Cir. 2017) ("[u]nder the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law") (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)).

## III.    Analysis

Defendants argue that Plaintiff's claims must be dismissed as a matter of law because SB 29, which in part added Texas Business Organizations Code § 21.552(a)(3), and the Amended Bylaws bar the claims. *See* Doc. No. 17 at 15. Specifically, Defendants argue that "[b]ecause [Plaintiff] [] admits that he is suing solely in a derivative capacity, and because the [Amended Bylaws] [were] adopted before he filed this action on July 10, 2025, his suit is facially barred by statute and by the [Amended Bylaws]." *Id.* Further, Defendants argue that Plaintiff's as-applied constitutional challenges to SB 29 and the Amended Bylaws are "entirely groundless."

*Id.* at 19.

In response, Plaintiff argues that Defendants' adoption of the Amended Bylaws was a breach of their fiduciary duty, SB 29 and the Amended Bylaws violate the retroactivity prohibition in the Texas Constitution, and enforcement of the Amended Bylaws against Plaintiff violates principles of Texas contract law. *See* Doc. No. 31 at 18–28. For the following reasons, the Court **GRANTS** Defendants' Motion.

### A.    SB 29's Ownership Threshold

Governor Greg Abbott signed SB 29 into law, to have immediate effect, on May 14, 2025. Doc. No. 17 at 7; *see also* S.B. 29, 89th Leg., Reg. Sess., at § 27 (Tex. 2025) (legislation takes immediate effect upon approval of two-thirds of all members elected to each house). The portion of SB 29 at issue here amends Texas Business Organizations Code § 21.552(a). *See* S.B. 29, 89th Leg., Reg. Sess., at § 13 (Tex. 2025). Pursuant to the amendments enacted by SB 29, publicly listed companies may adopt restrictions on derivative proceedings. *See* TEX. BUS. ORGS. CODE ANN. § 21.552(a)(3). Specifically, public companies may limit the right of their shareholders to institute a derivative proceeding to shareholders who "beneficially own[] a number of the common shares sufficient to meet the required ownership threshold to institute a derivative proceeding in the right of the corporation identified in the corporation's certificate of formation or bylaws, provided that the required ownership threshold does not exceed three percent of the outstanding shares of the corporation." *Id.*

On May 16, 2025, two days after SB 29 went into effect, Defendants adopted

9

the Amended Bylaws. *See* Doc. No. 1 at 7, ¶13; Doc. No. 18 at 246–280 (Fifth Amended and Restated Bylaws of Southwest (herein referred to as the "Amended Bylaws")). The Amended Bylaws include a provision titled "Derivative Proceedings," which closely mirrors Texas Business Organizations Code § 21.552(a)(3). *See* Doc. No. 1 at 36, ¶79. This provision, challenged by Plaintiff, states that "[n]o shareholder may institute or maintain a derivative proceeding unless that shareholder is a Shareholder (as defined in Section [21].551(2) of the Texas Business Organizations Code) *that beneficially owns at least three (3) percent of the outstanding shares of the corporation." Id.*; Doc. No. 18 at 267–68 (emphasis added). Plaintiff served his written shareholder demand on Defendants on April 28, 2025, prior to the enactment of SB 29 and adoption of the Amended Bylaws. Doc. No. 1 at 35–36, ¶78. However, Plaintiff filed his Complaint against Defendants on July 10, 2025, *after* enactment of SB 29 and adoption of the Amended Bylaws. *See id.* Defendants argue that Plaintiff's claims are barred by SB 29 and the Amended Bylaws because a written demand letter does not constitute a "derivative proceeding" under the Texas Business Organizations Code. *See* Doc. No. 17 at 15–18.

The Court finds that, absent other grounds, SB 29 **bars** Plaintiff's claims as a matter of law. SB 29 applies "only to a derivative proceeding instituted *on or after the effective date of [SB 29]."* S.B. 29, 89th Leg., Reg. Sess., at § 26 (Tex. 2025) (emphasis added). So, SB 29 only applies to derivative proceedings instituted on or after May 14, 2025. *See* Doc. No. 17 at 7 (effective date of SB 29 is May 14, 2025). Defendants

10

adopted the Amended Bylaws, including the share ownership threshold, on May 16, 2025. *Id.*

The Texas Business Organizations Code defines "derivative proceeding" as a "*civil suit* in the right of a domestic corporation[.]" TEX. BUS. ORGS. CODE ANN. § 21.551(1) (emphasis added). Because the Texas Business Organizations Code does not define the term "suit," the Court looks to the term's plain and ordinary meaning. *See Hogan v. Zoanni*, 627 S.W.3d 163, 169 (Tex. 2021) (quoting *EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744, 758 (Tex. 2020)); *see also* TEX. GOV'T CODE ANN. § 311.011(a) ("[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage"). Courts often look to dictionaries for plain and ordinary meaning. *Cascabel Cattle Co., L.L.C. v. United States*, 955 F.3d 445, 451 (5th Cir. 2020). "Suit" is defined as "[a]ny proceeding by a party or parties against another in a court of law." *Suit*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see also Thomas v. Oldham*, 895 S.W.2d 352, 356 (Tex. 1995) ("[t]he term 'action' is generally synonymous with 'suit,' which is a demand of one's rights in *court*"). Therefore, the term "derivative proceeding," which Texas law defines as a "civil suit," is indisputably a shareholder lawsuit brought on behalf of a corporation *in a court of law*.

It is inapposite, then, to incorporate a written demand into the term "derivative proceeding." Plaintiff served his written demand on Defendants prior to SB 29's enactment. *See* Doc. No. 1 at 35–36, ¶78. However, a written shareholder demand is delivered to a corporation's board of directors, not a court of law. Further, the Texas

11

Business Organizations Code expressly distinguishes between a written demand letter and a derivative proceeding. *See* TEX. BUS. ORGS. CODE ANN. § 21.553(a) ("[a] shareholder may not institute a *derivative proceeding* until the 91st day after the date a *written demand* is filed with the corporation"). "[D]ifferent words within the same statute should, if possible, be given different meanings." *Cascabel Cattle*, 955 F.3d at 451 (quoting *BNSF Ry. Co. v. United States*, 775 F.3d 743, 755 n. 86 (5th Cir. 2015)); *Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 727 (Tex. 2024). Section 21.553(a) differentiates between two distinct events in the same sentence: (1) a written demand served on a corporation, and (2) the institution of a derivative proceeding at least 90 days *after* the demand. *See* TEX. BUS. ORGS. CODE ANN. § 21.553(a) (emphasis added). Different words within the same statute, much less the same sentence, are presumed to mean different things, and nothing in the record or the statute indicates that this presumption is inapplicable here. *See Malouf*, 694 S.W.3d at 727. The statute plainly assigns different meanings to the terms "written demand" and "derivative proceeding."

Based on the foregoing, the Court agrees with Defendants that "SB 29's plain language belies any legislative intent to allow lawsuits by [below-threshold] shareholders who sent demand letters but did not file suit before SB 29 became effective." Doc. No. 17 at 17. SB 29 applies to derivative proceedings instituted on or after SB 29's effective date. *See* S.B. 29, 89th Leg., Reg. Sess., at § 26 (Tex. 2025). Because a derivative proceeding is a lawsuit filed in court, a written demand cannot "institute" a derivative proceeding. Rather, the filing of the derivative *lawsuit* institutes

such proceeding. *See In re Life Partners Holdings, Inc.*, Consol. Case No. DR-11-CV-43-AM, 2012 WL 12875942, at *2 (W.D. Tex. May 9, 2012) (shareholder complied with Texas law by filing derivative suit *after* corporation rejected demand) (emphasis added). In fact, written demand and institution of a derivative proceeding are two different events that occur at different times. *See* TEX. BUS. ORGS. CODE ANN. § 21.553(a). To quote Defendants, the timing of Plaintiff's written demand "is of no moment." Doc. No. 17 at 15.

SB 29 was enacted and took immediate effect on May 14, 2025. *See id.* at 10–11. Defendants adopted the Amended Bylaws on May 16, 2025, two days after SB 29's enactment. Doc. No. 1 at 7, ¶13. The Amended Bylaws prohibit shareholder derivative suits if the shareholder owns less than 3% of Southwest common stock. *Id.* Plaintiff admits that he owns 100 shares of Southwest common stock, far below the threshold set by the Amended Bylaws. *Id.* at 10, ¶26; 38, ¶85 (three percent ownership of Southwest common stock equates to about 17 million shares). Because he falls far below this threshold and did not institute the present derivative proceeding until *after* the effective date of SB 29 and adoption of the Amended Bylaws, Plaintiff's claims against Defendants are **BARRED** as a matter of law absent other grounds for non-enforcement of SB 29 and the Amended Bylaws.

### B.    Defendants' Fiduciary Duty

Plaintiff seeks declaratory judgment that the Amended Bylaws are invalid, in part because Defendants violated their fiduciary duties by adopting the Amended

Bylaws. *See id.* at 43, ¶109; 42, ¶106. Specifically, Plaintiff claims that "[a]s a result of the conduct of Defendants [], there is a controversy regarding the validity of the Amended Bylaws as it relates to Plaintiff, due to [Defendants'] violation of their fiduciary duties[.]" *Id.* at 43, ¶109. Defendants argue that Plaintiff's request for declaratory judgment "is itself a derivative claim" barred by SB 29. Doc. No. 17 at 19.

The Court agrees with Defendants. A director's fiduciary duties "run to the *corporation*, not to individual shareholders or even to a majority of shareholders. *In re Poe*, 648 S.W.3d 277, 287 (Tex. 2022) (emphasis added). Thus, a breach of fiduciary duty claim against a director "may be advanced only in a shareholder's derivative suit." *Gearhart Indus., Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 721 (5th Cir. 1984). However, the Court has already determined that Plaintiff's derivative claims are barred by SB 29 and the Amended Bylaws. Using a breach of fiduciary duty allegation to invalidate the Amended Bylaws does not get Plaintiff around SB 29's statutory bar.

### C.    Retroactivity

Plaintiff argues that SB 29 is unconstitutional as applied to him because Texas Business Organizations Code § 21.552(a)(3) violates the Texas Constitution's prohibition against retroactive application of laws. *See* Doc. No. 41. Plaintiff also alleges that the Amended Bylaws are invalid because Defendants adopted them in violation of the retroactivity prohibition. Doc. No. 1 at 43, ¶109. Conversely, Defendants argue that the prohibition is inapplicable because SB 29 "does not retroactively bar an already-pending lawsuit or extinguish an already-vested right," but instead only applies

14

to derivative proceedings instituted on or after SB 29's effective date. Doc. No. 17 at 23–24.

The Texas Constitution states that "[n]o bill of attainder, ex post facto law, *retroactive law*, or any law impairing the obligation of contracts, shall be made." Tex. Const. Art. I, § 16 (emphasis added). The prohibition against retroactivity serves two purposes: (1) it "protects the people's reasonable, settled expectations," and (2) it "protects against abuses of legislative power." *Robinson v. Crown Cork & Seal Co., Inc.*, 335 S.W.3d 126, 139 (Tex. 2010) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265–66 (1994)). To show that a statute is retroactive, a plaintiff must show that he "had a reasonable and settled expectation that he could recover money damages" from the defendant. *Hogan v. SMU*, 688 S.W.3d 852, 860 (Tex. 2024). Both Plaintiff and Defendants brief a three-factor test for determining whether a law violates the retroactivity prohibition. *See Robinson*, 335 S.W.3d at 145. Referred to herein as the "*Robinson* factors," the Court must consider three factors in determining whether SB 29 is retroactive: "[1] the nature and strength of the public interest served by the statute as evidenced by the Legislature's factual findings; [2] the nature of the prior right impaired by statute; and [3] the extent of the impairment." *Id.* There is a "heavy presumption *against* retroactive laws." *Id.* at 146 (emphasis added).

Applying the *Robinson* factors to SB 29, the Court finds that SB 29 does not violate the retroactivity prohibition. First, the Court finds that SB 29 serves a significant public interest. SB 29's Bill Analysis states that the statute is "a bold step

toward making Texas the corporate law capital of America by modernizing the Texas Business Organizations Code." Senate Comm. on State Affairs, Bill Analysis, Tex. S.B. 29, 89th Leg., R.S. (2025). The Bill Analysis further markets SB 29 as legislation that will allow Texas to catch up to states like Delaware and Nevada, who have long-standing, sophisticated corporate statutes. *See id.* Through SB 29, the analysis says, executives around the country will notice that "Texas is ready for sophisticated business disputes." *Id.* Clearly, SB 29 is meant to bring corporate business to Texas and provide statutory incentive to incorporate and conduct business here, and Plaintiff does not dispute that objective. Further, SB 29 "sets fair thresholds for shareholder actions." *Id.* SB 29 is yet another example of the well-recognized concept that "corporate relationships are largely matters governed by statute and contract." *Ritchie v. Rupe*, 443 S.W.3d 856, 891 (Tex. 2014). The Court finds that the public interest served by SB 29 is strong, so the first *Robinson* factor weighs against retroactivity.

Second, the Court finds that the statute does not impair a prior right of Plaintiff. "[A] cause of action for breach of directors' fiduciary duties belongs to the *corporation* and cannot be brought by a stockholder in his own right, nor can the shareholder directly prosecute the suit in the name of the corporation. *Gearhart*, 741 F.2d at 721 (emphasis added); *see also Setliff v. Zoccam Techs.*, Civ. Action No. 3:21-CV-2025-B, 2022 WL 504395, at *10 (N.D. Tex. Feb. 18, 2022) (Boyle, J.) ("[d]irectors and officers of a corporation owe a fiduciary duty to the corporation and this duty might come into conflict with the best interests of individual shareholders"). The Texas

16

Business Organizations Code expressly states that a derivative proceeding is a suit brought "in the right of a domestic corporation." TEX. BUS. ORGS. CODE ANN. § 21.551(1); *see also* § 21.552(a)(2) (to bring a derivative proceeding, shareholder must adequately represent corporation's interest "in enforcing the right of the corporation"). Further, any recovery in a derivative action belongs to the corporation, not the shareholder-plaintiff. *Johnson ex rel. MAII Holdings, Inc. v. Jackson Walker, L.L.P.*, 247 S.W.3d 765, 779 (Tex. App.—Dallas 2008, pet. denied); *see also Christian v. ICG Telecom Canada, Inc.*, 996 S.W.2d 270, 274 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("[i]n a derivative action, the plaintiffs seek recovery *for the corporation*"). If any "prior right" is impaired, it is a right belonging to Southwest, *not* Plaintiff. Accordingly, the second *Robinson* factor also weighs against retroactivity.

Third, the Court finds that the extent of any impairment on Plaintiff is negligible. The Court agrees with Defendants that SB 29 governs a right that rests with Southwest, not Gusinsky. *See* Doc. No. 17 at 25; *Gearhart*, 741 F.2d at 721. The only impairment Plaintiff faces is the inability to bring a derivative action *in the right* of Southwest. *See* TEX. BUS. ORGS. CODE ANN. § 21.551(1) (emphasis added). Ultimately, Plaintiff must show that he had a "settled expectation" to recover monetary damages from Defendants. *Hogan*, 688 S.W.3d at 860. However, even if Plaintiff were to prevail at trial, he would not be entitled to any monetary damages awarded by the jury. *See MAII Holdings*, 247 S.W.3d at 779. The Court finds that the third *Robinson* factor, and the entire *Robinson* test, weigh against a finding that SB 29 retroactively applies to

17

Plaintiff.

Plaintiff also argues that SB 29 violates the retroactivity prohibition because at the time of SB 29's enactment and the Amended Bylaws' adoption, his "fiduciary duty claims [were] accrued and [] pending." Doc. No. 31 at 23. However, Plaintiff's claims were indisputably not "pending" at the time SB 29 went into effect and Defendants adopted the Amended Bylaws. For a cause of action to be "pending," the plaintiff *must have filed suit* by or before the effective date of the challenged statute. *See Satterfield v. Crown Cork & Seal Co., Inc.*, 268 S.W.3d 190, 207 (Tex. App.—Austin 2008, no pet.) (emphasis added); 211 ("[b]ecause [plaintiff's] common law claims of negligence and strict products liability accrued and were *pending in the trial court* when the Statute took effect," plaintiff's claims could not be retroactively extinguished); *Pending*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("[r]emaining undecided; awaiting decision <a pending case>"). Plaintiff filed his Complaint in this Court on July 10, 2025. *See* Doc. No. 1. Because he had not filed suit by or before SB 29's effective date, Plaintiff's claims were not "pending" such that the retroactivity prohibition applies.

Accordingly, the Court finds that SB 29 and the Amended Bylaws do not violate the Texas Constitution's prohibition against retroactivity. Plaintiff's as-applied constitutional challenge fails.

### D.    Texas Contract Law

Plaintiff also alleges that he is entitled to declaratory judgment that the Amended Bylaws are inapplicable to him because they violate principles of Texas

18

contract law. Doc. No. 1 at 43, ¶109. In his Response, Plaintiff argues that the Amended Bylaws are "unreasonable because he would be entirely deprived of his day in court and a remedy," they are the "product of fraud or overreaching," and they were "implemented for an improper purpose." Doc. No. 31 at 27–29.

The Court finds Plaintiff's "contract" argument unpersuasive. "[A] corporation's charter creates a contractual relationship between the corporation and its shareholders." *SMU v. S. Cent. Jurisdictional Conf. of The United Methodist Church*, 716 S.W.3d 475, 487 (Tex. 2025). So too do the bylaws of a corporation give rise to a contractual relationship between the corporation and its shareholders. *See Butorin on behalf of KBR Inc. v. Blount*, 106 F. Supp. 3d 833, 842 (S.D. Tex. 2015). Plaintiff does not dispute that Southwest's Certificate of Formation and its Amended Bylaws create a contractual relationship between him and Southwest. *See SMU*, 716 S.W.3d at 487. Plaintiff also does not dispute that he, as a Southwest shareholder, was on notice that Defendants could amend the bylaws without shareholder approval. *See* Doc. No. 18 at 275, § 4 ("the Board of Directors may amend or repeal these Bylaws, or adopt new bylaws"). Further, Plaintiff does not argue that Defendants' power to amend the bylaws in this fashion was otherwise curtailed by Southwest's shareholders.

Plaintiff's only proffered argument on this point is that the Amended Bylaws "constituted unfair surprise to Plaintiff, specific to the [Amended] Bylaw clause, because the [Amended Bylaws] [were] adopted ***less than three weeks*** after Plaintiff served the Demand, apparently because of the Demand." Doc. No. 31 at 28–29

19

(emphasis original); *see also* Doc. No. 1 at 37, ¶ 82 ("the Board appears to have adopted the Amended Bylaws *in response to* Plaintiff's demand"). The Court finds this argument equally unpersuasive because SB 29 went into effect *two days before* Defendants adopted the Amended Bylaws. *See* Doc. No. 17 at 7 (emphasis added). Plaintiff ignores this important date in the timeline, but the Court will not. The Court believes it is just as likely that Defendants adopted the Amended Bylaws, including the percentage ownership requirement, in response to the statute, passed two days prior, giving them the authority to do so.

The Court does not find that Plaintiff's "contract" argument negates the bar that SB 29 and the Amended Bylaws place on his claims against Defendants.

### E.    Open Courts and "Federal" Arguments

Plaintiff also alleges, in conclusory fashion, that SB 29 and the Amended Bylaws violate the Texas Constitution's open courts provision and are "irreconcilable with federal [law]." Doc. No. 1 at 38, ¶87; 43, ¶109. However, Plaintiff's Response provides no argument, or even passing reference, to these allegations. When a plaintiff's response or opposition to a motion to dismiss fails to provide argument in support of a claim, the plaintiff abandons that claim. *See In re Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n. 1 (5th Cir. 2006)); *see also Bearden v. USDA, RHS*, Civ. Action No. 3:23-CV-01204-E, 2023 WL 6462861, at *2 (N.D. Tex. Oct. 2, 2023) (Brown, J.) ("a party's failure to defend a claim in her response to a motion to dismiss constitutes abandonment"); *Vela v. City*

20

*of Houston*, 276 F.3d 659, 678–79 (5th Cir. 2001) (defendant abandoned affirmative defense by not providing argument in support of such defense in defendant's opposition to summary judgment). Plaintiff's Response provides no argument for either his open courts or federal law allegations. Therefore, he has abandoned those theories of recovery, and in this instance, defenses against the bar created by SB 29 and the Amended Bylaws.

### F.    Plaintiff's Request for Leave to Amend

Plaintiff requests that, should the Court grant the Motion (as it does herein), Plaintiff be given leave to amend, "including by repleading his claims as direct claims if the Court finds the [Amended] Bylaw[s] bar[] his derivative action." Doc. No. 31 at 31. However, Plaintiff asserts a breach of fiduciary duty claim and a request for declaratory judgment based on his fiduciary duty claim and other constitutional and contractual theories that the Court has disposed of herein. It is well-established that a breach of fiduciary duty claim against a corporation's directors belongs to the corporation, not the plaintiff-shareholder. *See Gearhart*, 741 F.2d at 721. Accordingly, the Court **DENIES** Plaintiff's request for leave to amend.

21

## IV.     Conclusion

For the foregoing reasons, the Court finds that SB 29 and the Amended Bylaws

**bar** Plaintiff's claims as a matter of law. Accordingly, the Court **GRANTS** Defendants'

Motion and **DISMISSES WITH PREJUDICE** Plaintiff's claims against Defendants.

**SO ORDERED.**

Signed March 17th, 2026.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE